**AREA EDUCATION AGENCY 7 and EMC Insurance Companies, Appellees,**

v.

**Marilyn BAUCH, Appellant.**

No. 00–1350.

Supreme Court of Iowa.

May 8, 2002.

Rehearing Denied July 1, 2002.

Robert C. Andres of Fulton, Martin & Andres, P.C., Waterloo, for appellant.

E.J. Giovannetti and Tina M. Eick of Hopkins & Huebner, P.C., Des Moines, for appellees.

Michael A. McEnroe and Chad A. Swanson of Dutton, Braun, Staack & Hellman, P.L.C., for amicus curiae, Iowa State Education Association.

NEUMAN, Justice.

Marilyn Bauch, a special education consultant, was injured at work and applied for workers' compensation benefits. A dispute arose over the calculation of her benefits because Bauch's annual salary with her employer, Area Education Agency 7(AEA), is based on a ten-month contract payable in twelve monthly installments. In other words, Bauch earns more each month than she is paid, deferring the remainder of her salary to the summer months when school is not in session.

The chief deputy workers' compensation commissioner calculated Bauch's weekly benefits in accordance with the "daily, or hourly" formula of Iowa Code section 85.36(6) (1999). On the employer's application for judicial review the district court reversed, finding Bauch's earnings should have been calculated under the "monthly" formula of section 85.36(4), substantially lowering her benefit. On appeal, we are convinced the district court applied the correct statute but overlooked a crucial factor in the formula. We therefore reverse and remand to the agency for a recalculation of the benefits to which Bauch is entitled.

## I. Background Facts and Proceedings.

The facts are undisputed. Bauch was employed by AEA during the 1995–96 school year. In June 1996, near the end of her 198–day contract, Bauch slipped on a wet floor, breaking her left elbow and a small bone in her wrist. There is no dispute this injury arose out of and in the course of Bauch's employment.

Bauch filed a claim for benefits with the Workers' Compensation Commission. The record made before the agency revealed that Bauch's gross earnings for the 1995–96 school year totaled $40,318.20. Her contract required her to work 198 days, or roughly ten months. It was further agreed that, pursuant to the AEA's collective bargaining agreement, her earnings were paid in twelve monthly installments of $3359.85. For purposes of calculating deductions for unexcused absences, Bauch's per diem rate of pay was $203.63.

The deputy assigned to hear the case determined that Bauch's weekly earnings should be calculated under Iowa Code section 85.36(6), based on her per diem compensation. Reasoning this result was "consistent with agency precedence, a requirement of the [deputy's] position," the deputy calculated Bauch's gross weekly wage at $1018.15 (203.63 × 5), resulting in

a weekly benefit of $609.24. The deputy's decision was affirmed by the agency on AEA's interagency appeal.

The AEA then petitioned the district court for judicial review. Reversing, the district court noted the agency failed to properly apply either section 85.36(4) or (6), instead crafting a formula tailored to Bauch's status as an educator. The court decided that because Bauch was paid on a monthly basis, her earnings must be computed pursuant to section 85.36(4). Using her monthly salary as a base, the court calculated Bauch's gross weekly earnings at $775.35 (3359.85 $\times$ 12 $\div$ 52), resulting in a weekly benefit of only $478.64. From this decision, Bauch appeals.

## II. Scope of Review.

■■■■ On appeal from judicial review of agency proceedings under Iowa Code chapter 17A, our review is "limited to determining whether the district court correctly applied the law in exercising its section 17A.19(8) judicial review function." *Gilbert v. USF Holland, Inc.*, 637 N.W.2d 194, 198 (Iowa 2001); *accord Myers v. F.C.A. Servs., Inc.*, 592 N.W.2d 354, 356 (Iowa 1999). While we give deference to an agency's interpretation of statutes governing its area of expertise, its interpretations of law are not conclusive. *Darrow v. Quaker Oats Co.*, 570 N.W.2d 649, 651 (Iowa 1997); *Hanigan v. Hedstrom Concrete Prod., Inc.*, 524 N.W.2d 158, 160 (Iowa 1994).

## III. Issue on Appeal.

The question is whether the workers' compensation weekly benefits rate for educators should be calculated under Iowa Code section 85.36(4) or section 85.36(6). Because her ten-month contract is paid out annually in monthly installments, Bauch argues it is fairer to calculate her weekly earnings using the per diem formula of section 85.36(6). To do otherwise, she argues, would create inequities when compensating educators depending on whether a collective bargaining agreement calls for payments over a nine-, ten- or twelve-month period. The Iowa State Education Association, as amicus curiae, joins in this argument. The AEA counters that section 85.36(4) must be applied to calculate Bauch's weekly benefits based on her monthly wages of $3359.85 paid throughout the year.

## IV. Applicable Law.

■■■■ Several fundamental principles guide our assessment of the parties' conflicting arguments. First and foremost, we are obliged to apply the pertinent statutes as written. Only in cases of ambiguity do we resort to rules of statutory construction. *Brown v. Star Seeds, Inc.*, 614 N.W.2d 577, 579 (Iowa 2000). "Strict statutory construction is not to be used to inject doubt when legislative intent is evident through a reasonable construction of the statute." *State v. Bonstetter*, 637 N.W.2d 161, 166 (Iowa 2001). We give statutory words their ordinary meaning unless a contrary intent is evident or doing so would lead to absurdity, injustice or contradictions between statutes. *Lauhoff Grain Co. v. McIntosh*, 395 N.W.2d 834, 838 (Iowa 1986). Because workers' compensation statutes exist to benefit employees, we view the law with a slant toward that objective. *Id.* The law's beneficent purposes should not be defeated by "reading something into it which is not there, or by a strained or narrow construction." *Thomas v. William Knudson & Son, Inc.*, 349 N.W.2d 124, 126 (Iowa Ct.App.1984).

The parties cite numerous cases from other jurisdictions to support their respec-

tive positions.[1] We have reviewed these decisions but find them of very limited value. Each state employs a unique statutory scheme to deal with teacher compensation. Cases from outside our state yield no definitive answer to the question before us.

That brings us to the governing statutes. Iowa Code section 85.36, and its pertinent subparts, describes the benefit calculation this way:

> The basis of compensation shall be the *weekly earnings* of the injured employee at the time of the injury. *Weekly earnings* means *gross* salary, wages, or *earnings of an employee to which such employee would have been entitled had the employee worked the customary hours for the full pay period in which the employee was injured,* as regularly required by the employee's employer for the work or employment for which the employee was employed, computed or determined as follows and then rounded to the nearest dollar:
>
> . . . .
>
> 4. In the case of an employee who is *paid on a monthly pay period basis,* the monthly gross earnings multiplied by twelve and subsequently divided by fifty-two.
>
> . . . .
>
> 6. In the case of an employee who is *paid on a daily, or hourly basis,* or by the output of the employee, the weekly earnings shall be computed by dividing by thirteen the earnings, not including overtime or premium pay, of said employee earned in the employ of the employer in the last completed period of thirteen consecutive calendar weeks immediately preceding the injury.

Iowa Code § 85.36 (emphasis added). Crucial to a full understanding of the statutory language is the separate definition of gross earnings. Gross earnings are defined as:

> recurring payments by the employer to the employee for employment, *before any authorized or lawfully required deduction or withholding of funds by the employer,* excluding irregular bonuses, retroactive pay, overtime, penalty pay,

---

1. *See generally Powell v. Indus. Comm'n,* 104 Ariz. 257, 451 P.2d 37, 38–39, 43 (1969) (where statute provides employee should be compensated based on monthly wages, as set forth in the contract of employment, length of teacher's employment contract governs whether teacher's earning capacity determined on twelve month or some other basis); *Wimmer v. Indus. Comm'n,* 26 Ariz.App. 524, 549 P.2d 619, 622 (1976) (same); *Lynch v. U.S.D. No. 480,* 18 Kan.App.2d 130, 850 P.2d 271, 274 (1993) (statute provides "average weekly wage shall be the gross amount of money earned during the number of calendar weeks employed"); *Brounette v. E. Baton Rouge Parish Sch. Bd.,* 610 So.2d 979, 980 (La.Ct.App.1992) (teacher paid in nine monthly installments, but classified as "annual salaried employee," entitled to benefits based on yearly wages divided by fifty-two); *Herbst's Case,* 416 Mass. 648, 624 N.E.2d 564, 565 (1993) (where "average weekly wage" defined as "the earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two," court found it appropriate to calculate earnings on basis of fifty-two week year); *Duran v. Albuquerque Pub. Schs.,* 105 N.M. 297, 731 P.2d 1341, 1343 (Ct.App.1986) (statute providing average weekly wage based on salary pursuant to contract of hire, required payment over fifty-two week year where contract of hire extended twelve months); *Jones v. Workers' Comp. Appeal Bd.,* 786 A.2d 1026, 1030 (Pa.Commw.Ct.2001) (where "earnings are fixed by contract, weekly earning power is to be calculated by dividing the yearly salary by [fifty-two] weeks rather than by the number of weeks actually worked"); *Stofa v. Workers' Comp. Appeal Bd.,* 702 A.2d 381, 383 (Pa.Commw.Ct.1997) (where salary fixed by "actual wages, set by contract on an annual basis," wages must be divided by fifty-two, not number of contract weeks, to reach average weekly wage).

reimbursement of expenses, expense allowances, and the employer's contribution for welfare benefits.

*Id.* § 85.61(3) (emphasis added).

### V. Analysis.

Plainly Iowa's statutory scheme requires the employer to pay benefits based on the employee's "weekly earnings." The calculation of weekly earnings starts with an examination of the employer's *method of paying* those earnings.

■ It is undisputed that AEA pays Bauch on a monthly basis. While Bauch and the union contend her wages accrue on a daily basis because she suffers a $203.63 deduction for each unexcused absence, her contract clearly establishes that she will be paid once per month. Agency precedent notwithstanding, the mere fact a teacher's pay is docked for unexcused absences is irrelevant to the analysis of benefits due. *Duran,* 731 P.2d at 1344; *see Herbst's Case,* 624 N.E.2d at 566. Because the statutory framework requires us to start with the method of payment in determining the applicable code section, the monthly formula of Iowa Code section 85.36(4) cannot be ignored. Thus, contrary to Bauch's argument, the district court correctly determined section 85.36(4) applies to her case, not section 85.36(6) as the agency originally determined.

■ Once it is determined that the employee is paid on a monthly basis, a simple two-step process follows. First the *monthly gross earnings,* as defined in section 85.61(3), must be calculated. After making this calculation, the statutory formula is applied. It is in the first step that we believe the district court erred.

While specifically stating Bauch's "weekly earnings must be computed pursuant to Iowa Code § 85.36(4)," the court seemingly overlooked the statute's definition of "gross earnings." As noted, gross earnings includes all recurring payments but excludes any *"lawfully required deduction or withholding of funds by the employer."* Iowa Code § 85.61(3) (emphasis added). In this case, the parties agreed Bauch's monthly wages were payable at a rate of $3359.85 per month. However, this monthly payment does not reflect Bauch's earned compensation deferred into the non-school year months.

In *Meyer v. Employment Appeal Board,* 441 N.W.2d 766, 768–69 (Iowa 1989), we held "deferred wages were actually 'payable' [when] earned." There, in the context of our unemployment statutes, we agreed that once the school year ended, Meyer no longer drew wages; rather, she was merely collecting her past earnings due. *Id.* at 769. We believe the proposition applies equally well in the workers' compensation context. While Bauch is *paid* $3359.85 per month for twelve months, she actually *earns* approximately $4031.82 per month under her ten-month contract.

The AEA argues that *Meyer* is inapplicable because adding Bauch's deferred compensation to the monthly wage calculation does not "artificially lower" her compensation level; it increases it. But *Meyer* did not rest on the distinction AEA urges. The case simply made the point that "deferred wages were actually 'payable' [to the employee] when earned." *Id.* at 769.

Once the correct monthly gross earnings are determined, calculating the second step of section 85.36(4) is straightforward. The monthly earnings must be multiplied by twelve and divided by fifty-two. *See* Iowa Code § 85.36(4). The resulting figure constitutes Bauch's weekly earnings under section 85.36.

### VI. Disposition.

Applying the pertinent statute according to its terms, we conclude the district

court erred in holding that Bauch was only entitled to benefits based on her monthly paycheck of $3359.85. Section 85.61's definition of "gross earnings" necessarily includes the amount of compensation deferred throughout the year. We recognize that the multiplier in section 85.35(4) does not account for the fact that educators like Bauch do not necessarily work year-round, as evidently contemplated by the statute. But it is the prerogative of the legislature, not the courts, to remedy oversights in legislative schemes. Our duty is merely to apply the plain language of the statute as written.

We therefore reverse the decision of the district court and remand to the agency for a recalculation of benefits in accordance with Iowa Code sections 85.36(4) (monthly earnings) and 85.61(3) ("defining gross earnings").

**REVERSED AND REMANDED WITH INSTRUCTIONS.**