# IN THE SUPREME COURT OF IOWA

No. 09–1633

Filed May 4, 2012

**JULIE K. BURTON,**

Appellant,

vs.

**HILLTOP CARE CENTER** and **IOWA LONG TERM CARE
RISK MANAGEMENT ASSOCIATION,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, D.J. Stovall, Judge.

Hilltop Care Center seeks further review from the court of appeals decision that reversed in part and affirmed in part the district court decision on a petition for judicial review of the workers' compensation commissioner. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

E.W. Wilcke, Spirit Lake, and Harry W. Dahl, Des Moines, for appellant.

Michael L. Mock, Parker, Simons & McNeill, P.L.C., West Des Moines and Ann C. Spellman of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

**ZAGER, Justice**.

This case comes before us on an application for further review from the court of appeals. After receiving the workers' compensation commissioner's final decision, both parties filed cross-petitions for judicial review in the district court. The district court affirmed in part, reversed in part, and remanded for additional fact-finding. Both parties filed cross-appeals. We transferred the case to the court of appeals, which affirmed in part and reversed in part on appeal and affirmed on cross-appeal. Hilltop Care Center (Hilltop)[1] sought further review, which we granted. We now vacate the decision of the court of appeals and reverse the district court in part. We remand the case to the district court with the following instructions on judicial review: to remand the case to the commissioner for a factual determination as to Hilltop's claim that an accounting error caused it to accidentally overpay Burton $916.67 per month (the difference between a $1000 per month raise and $1000 per year raise) for fifteen months; to affirm the commissioner's decision to include Burton's bonus in calculating her weekly earnings; to reconsider the commissioner's imposition of a penalty in light of its factual findings regarding Hilltop's claim that it overpaid Burton; and to affirm the commissioner's determinations as to the cause, nature and extent of Burton's injuries.

## I. Background Facts and Procedural History.

Julie Burton (Burton) began working at Hilltop as a dietary supervisor in December of 2002. As part of her duties Burton was required to supervise kitchen staff, lift heavy items, and move equipment. Burton's previous work history involved working as a bartender and

_____

[1]Appellees–cross-appellants Hilltop Care Center and the Iowa Long Term Care Risk Management Association will be referred to collectively as Hilltop.

caterer. Both of these jobs required lifting heavy items, such as full kegs of beer. During her previous employment, Burton went through five pregnancies and continued to work at these jobs during and after her pregnancies.

While working at Hilltop, Burton was subject to several performance reviews, and she received several raises. Of particular note in this case, in January 2005, Burton received a salary increase of $1000. Hilltop claims this was supposed to have been a raise of $1000 per year. However, through what Hilltop claims was an accounting error, Burton's salary was increased $1000 per month. Burton's salary reflected this $1000 per month raise from January of 2005 until Burton left Hilltop in April of 2006. Burton's supervisor continued to review her performance in 2006, and Burton received an additional raise at the start of that year.

This case involves two injuries: a foot injury and an abdominal injury. Burton's foot injury arose out of a fall from a ladder. On Saturday, January 28, 2006, Burton was standing on a ladder at work when it collapsed, trapping her leg. Burton went to the emergency room and had her foot placed in a splint. On Monday, Burton went to Dr. Brian Ford, her primary care physician, who referred her to Dr. Timothy Blankers, a podiatrist. She saw Dr. Blankers on January 31. Dr. Blankers placed Burton's ankle in an air-cast and recommended nonweight-bearing activities. Burton returned to work that day. Dr. Blankers recommended Burton return to weight bearing activities on February 14.

Burton filed a petition with the workers' compensation commissioner on June 23. Dr. Blankers examined Burton again on April 10, 2007, and suggested an impairment of 7% of the foot and that a

range of 3% to 7% was appropriate. An arbitration hearing was held before a deputy commissioner on May 21, 2007, and a decision was issued on October 26. The deputy found the injury was a scheduled member injury causing permanent disability, and the 7% impairment to the foot equated to a 4.9% functional impairment to the leg.

Burton's abdominal injuries are more complicated. In late 2004, Burton began to experience problems with vaginal bleeding between periods. In May of 2005, Burton saw Dr. Ford and complained of menopausal symptoms and heavy bleeding. At this time, Burton was not told that her condition was work related, and she was not given any lifting restrictions. Later on in 2005, Burton began to experience problems with incontinence, in addition to the heavy bleeding.

On April 7, 2006, Burton visited Dr. Ford due to problems with incontinence and menometrorrhagia and was referred to Dr. Jane Gaetze, an obstetrician–gynecologist. Burton saw Ford again on May 3 for vaginal and rectal bleeding and had a colonoscopy performed on May 5 by Dr. Brian Luepke. Burton saw Dr. Gaetze on May 11. Dr. Gaetze informed Burton that she would need a total hysterectomy and various other repairs to correct her abdominal injuries. Dr. Gaetze performed the surgery on May 24, 2006. After the surgery, Dr. Gaetze told Burton that her abdominal injuries were work related and were the result of repeated heavy lifting and physical labor. On July 14, 2006, Dr. Gaetze authorized Burton to return to work without any physical limitations.[2] On October 9, however, Dr. Gaetze permanently restricted Burton from lifting anything over fifty pounds. By this time, however, Burton was no

---

[2]Dr. Gaetze later imposed a ten to fifteen pound lifting restriction on Burton as a result of rectal bleeding while shoveling snow in early 2007. The commissioner determined this ten to fifteen pound restriction was not related to Burton's employment at Hilltop.

longer working at Hilltop. On April 24, 2006, Burton was told that she could no longer be a dietary supervisor at Hilltop. Rather than accept a lower paying position, Burton resigned.

On July 31, 2006, Burton filed her second petition with the commissioner, alleging she sustained a repetitive or cumulative injury to her blood vessels, soft tissues, abdomen, and uterus while working at Hilltop. After the same arbitration hearing, the deputy commissioner found the abdominal injuries were work-related conditions and awarded Burton a thirty percent industrial disability.

The arbitration decision covering both the foot and abdominal injuries was issued on October 26, 2007. As part of this decision, the deputy commissioner also calculated a weekly compensation rate for Burton and addressed the issues involving her bonus and request for penalty benefits. The deputy determined Hilltop should have included the $1000 per month pay increase and Burton's annual bonus when it determined her weekly compensation. The deputy also imposed a penalty on Hilltop for not including the bonus and for basing Burton's compensation on a $1000 per year raise. Hilltop filed a motion for rehearing, which the deputy commissioner denied. Hilltop and Burton both appealed to the commissioner from various aspects of the deputy's decision. On August 26, 2008, the commissioner affirmed and adopted the deputy's arbitration decision.

Hilltop and Burton then filed cross-petitions for judicial review under chapter 17A. The district court entered its ruling on April 27, 2009. The district court reversed the commissioner's calculation of benefits based on the $1000 per month raise Hilltop actually paid Burton and instead used the $1000 per year figure Hilltop claimed was accurate. Because Hilltop had used what the district court found to be the correct

wages, it reversed the award of penalty benefits. The district court also found the commissioner erred in his calculation of weekly benefits based on the bonus payment and remanded that issue to the commissioner for further analysis. The district court affirmed the commissioner's findings and award of benefits regarding Burton's foot injury and also affirmed the commissioner's findings as to the discovery, notice, and award of benefits regarding her abdominal injury. Burton appealed, and Hilltop cross-appealed. We transferred the case to the court of appeals. The court of appeals reversed the district court's ruling and determined that the $1000 per month raise and bonus should be included in the calculation of Burton's compensation rate, but did not reinstate the penalty benefit finding the issue was reasonably debatable. The court of appeals otherwise affirmed the commissioner's findings regarding Burton's foot and abdominal injuries. Hilltop applied for further review, which we granted.

**II. Issues.**

There were several issues presented to the court of appeals on appeal and cross-appeal. "On further review, we have the discretion to review any issue raised on appeal." *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010). In exercising our discretion, we can choose which issues to address. *See id.*; *see also Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 770 (Iowa 2009). Since Hilltop has not presented any new arguments, or pointed to any errors in the court of appeals decision which affirmed the district court's decision affirming the commissioner's findings as to the extent, notice, or cause of Burton's foot or abdominal injuries, we will let the district court's decision stand as the final decision on these issues. We will, however, address the compensation rate and penalty issues.

### III. Standard of Review.

Burton and Hilltop both sought judicial review of the decision of workers' compensation commissioner.

> Iowa Code section 17A.19(10) governs judicial review of agency decision making. We will apply the standards of section 17A.19(10) to determine whether we reach the same results as the district court. "The district court may grant relief if the agency action has prejudiced the substantial rights of the petitioner, and the agency action meets one of the enumerated criteria contained in section 17A.19(10)(*a*) through (*n*)."

*Evercom Sys., Inc. v. Iowa Utilities Bd.*, 805 N.W.2d 758, 762 (Iowa 2011) (citations omitted).

Under Iowa Code section 17A.19(10) (2007), our standard of review depends on the aspect of the agency's decision that forms the basis of the petition for judicial review. *See Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006). If an agency has been clearly vested with the authority to make factual findings on a particular issue, then a reviewing court can only disturb those factual findings if they are "not supported by substantial evidence in the record before the court when that record is reviewed as a whole." Iowa Code § 17A.19(10)(*f*); *see also Meyer*, 710 N.W.2d at 218. This review is limited to the findings that were actually made by the agency and not other findings that the agency could have made. *Meyer*, 710 N.W.2d at 218.

When an agency has been clearly vested with the authority to make factual determinations, "it follows that application of the law to those facts is likewise 'vested by a provision of law in the discretion of the agency.'" *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 465 (Iowa 2004) (quoting Iowa Code § 17A.19(10)(*f*)). When the application of law to fact has been clearly vested in the discretion of an agency, a reviewing court may only disturb the agency's application of the law to the facts of the

particular case if that application is "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(*m*); *see also Mycogen Seeds*, 686 N.W.2d at 465.

A reviewing court may also be asked to review an agency's interpretation of law. The level of deference afforded to an agency's interpretations of law depends on whether the authority to interpret that law has "clearly been vested by a provision of law in the discretion of the agency." *Compare* Iowa Code § 17A.19(10)(*c*), *with id.* § 17A.19(10)(*l*). If the agency *has not* been clearly vested with the authority to interpret a provision of law, such as a statute, then the reviewing court must reverse the agency's interpretation if it is erroneous. *Id.* § 17A.19(10)(*c*). If the agency *has* been clearly vested with the authority to interpret a statute, then a court may only disturb the interpretation if it is "irrational, illogical, or wholly unjustifiable." *Id.* § 17A.19(10)(*l*).

The level of deference owed to the workers' compensation commissioner's interpretations will be determined on a case-by-case basis. *Andover Volunteer Fire Dep't v. Grinnell Mut. Reins. Co.*, 787 N.W.2d 75, 80 n.3 (Iowa 2010). Thus, in determining the level of deference owed to the commissioner, we will not make "broad articulations of an agency's authority." *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 14 (Iowa 2010). Instead, we consider the agency's interpretive authority for each particular phrase under consideration. *Andover Volunteer Fire Dep't*, 787 N.W.2d at 80. We note that the legislature did not require the agency be *expressly* vested with the authority to interpret a statute; instead, the legislature only required the interpretative authority be *clearly* vested in the agency. *Renda*, 784 N.W.2d at 11; *see also Swiss Colony, Inc. v. Deutmeyer*, 789 N.W.2d 129, 133 (Iowa 2010) ("In the absence of such an explicit grant of authority,

we must determine whether the legislature, nevertheless, 'clearly' vested the agency with the power to interpret the statute by implication."). When determining whether an agency has been clearly vested with the authority to interpret a provision of law,

> [w]e do not focus our inquiry on whether the agency does or does not have the broad authority to interpret the act as a whole. Instead, when determining whether the legislature has clearly vested the agency with authority to interpret, "each case requires a careful look at the specific language the agency has interpreted as well as the specific duties and authority given to the agency with respect to enforcing particular statutes."

*Andover Volunteer Fire Dep't*, 787 N.W.2d at 79–80 (quoting *Renda*, 784 N.W.2d at 13) (internal citation omitted).

When a term is not defined in a statute, but the agency must necessarily interpret the term in order to carry out its duties, we are more likely to conclude the power to interpret the term was clearly vested in the agency. *See Renda*, 784 N.W.2d at 12. This is especially true "when the statutory provision being interpreted is a substantive term within the special expertise of the agency." *Id.* at 14. However, "[w]hen a term has an independent legal definition that is not uniquely within the subject matter expertise of the agency," or when the language to be interpreted is "found in a statute other than the statute the agency has been tasked with enforcing," we are less likely to conclude that the agency has been clearly vested with the authority to interpret that provision of the statute. *Id.*

With these principles of review in mind we now turn to the parties' claims in the present case.

### IV. Compensation Rate Dispute.

The parties disagree over the proper basis of computation of Burton's benefits. First, the parties dispute whether sections 85.36 and

85.61(3) permit the commissioner to include as "gross earnings" the amount an employer allegedly overpaid an employee due to an accounting error when calculating weekly benefits. Second, the parties dispute whether Burton's 2005 year-end bonus should be included as part of "gross earnings" as defined under section 85.61(3) when calculating weekly benefits. In pertinent part, section 85.36 states:

> The basis of compensation shall be the weekly earnings of the injured employee at the time of the injury. Weekly earnings means *gross* salary, wages, or *earnings* of an employee *to which such employee would have been entitled had the employee worked the customary hours for the full pay period in which the employee was injured*, as regularly required by the employee's employer for the work or employment for which the employee was employed, computed or determined as follows and then rounded to the nearest dollar:
>
> . . . .
>
> 3. In the case of an employee who is paid on a semimonthly pay period basis, the semimonthly gross earnings multiplied by twenty-four and subsequently divided by fifty-two.

(Emphasis added.) "Gross earnings" is defined as

> recurring payments by employer to the employee *for employment*, before any authorized or lawfully required deduction or withholding of funds by the employer, *excluding irregular bonuses*, retroactive pay, overtime, penalty pay, reimbursement of expenses, expense allowances, and the employer's contribution for welfare benefits.

Iowa Code § 85.61(3) (emphasis added). We will now apply these statutes to the present case.

**A. Hilltop's Claim that Burton's $1000 per Month Raise Was the Result of an Accounting Error and Should Not Have Been Included as Gross Earnings in Determining Her Compensation.** The parties agree that Burton was paid twice a month. The parties also agree that in January 2005, Burton's salary increased by $1000 per month.

Hilltop claims the $1000 per month increase was an accounting error and Burton's raise was only meant to be $1000 per year. As a result of receiving a $1000 per month raise, Burton was paid $1625.00 per pay period. Had she received a $1000 per year raise, she would have been paid $1166.67 per pay period. Hilltop focuses on the phrase "to which such employee would have been entitled" in section 85.36 and claims that, because the increase was due to an accounting error, Burton was not "entitled" to $1000 per month, and her basis of compensation should be what her salary should have been without the error. Burton argues that the "entitled" language does not apply to this dispute because Burton worked a full pay period prior to her injury. She also argues that her benefits should be based on the salary she actually received from Hilltop and that the district court erred when it determined on its own that her wages were improperly inflated due to an accounting error. We will discuss each of these arguments.

The commissioner heard testimony on this issue from Burton and from Sandra Ferguson, the administrator at Hilltop. The commissioner acknowledged Hilltop's claims in his combined findings of fact and conclusions of law. The commissioner stated:

> Defendants have argued that the computation of gross salary should reflect the amount they meant to pay the claimant rather than what they actually paid the claimant. In their brief, defendants cite part of a sentence in the above statute in an attempt to support their position. "Weekly earnings means gross salary, wages, or earnings of an employee to which such employee would have been entitled had the employee worked the customary hours for the full period . . . ." This section does not support the defendant's argument. *The above quoted section is to be used if a claimant has not worked a full pay period. It is not applicable in a case where an employe[r] has been paying an employee wage for over a year and a quarter.* The claimant worked her full hours during each pay period. The defendants provided no case or other legal authority to support their position. The Claimant received the salary from the defendant, had a

review of her performance by her supervisor at the higher wage rate and the claimant paid income tax based upon the receipt of the high wage rate.

(Emphasis added.) In ruling on Hilltop's motion for rehearing, the commissioner stated,

Defendants have objected to the inclusion of wages they paid the claimant from January 2005 through her last day of employment, April 24, 2006. The defendants have characterized the wages they paid the claimant for over 15 months as being inflated wages and have alleged that it was an administrative error on their part for paying it to the claimant for almost a year and a half. The record shows the claimant was paid bimonthly with checks stamped with her employer's signature. The record shows also that the claimant was evaluated annually and was subject to frequent monitoring by her supervisor. Further the claimant's salary which included the raise was within the mean average wage of food service supervisors according to the defendants['] own expert.

As detailed in the arbitration decision Iowa Code section 85.36 defines how earnings are to be calculated in order to determine an[] employee's weekly earnings. In determining what an employee's weekly earnings are for an employee who is paid bimonthly, the gross earnings were multiplied by 24 and subsequently divided by 52. Gross earnings are defined by Iowa Code section 85.61(3) as follows[:]

3. "Gross earnings" means recurring payments by employer to the employee for employment, before any authorized or lawfully required deduction or withholding of funds by the employer, excluding irregular bonuses, retroactive pay, overtime, penalty pay, reimbursement of expenses, expense allowances, and the employer's contribution for welfare benefits.

Under the facts of this case, the claimant received recurring payments by the employer to the employee for employment. Those payments were used in calculation of the weekly earnings. The defendants['] request for rehearing based on calculation of the wages is denied.

These passages are a tapestry of interwoven findings of fact, application of law to fact, and interpretations of law. Prior to reviewing these

statements, our first task is to categorize the nature of each statement made by the agency.

Interconnected findings of fact, interpretations of law, and applications of law to fact pose a uniquely difficult problem on judicial review. We have advised attorneys about the need to avoid lumping together challenges based on questions of law, questions of fact, and application of law to fact. Under section 17A.19(10), our approach when reviewing an agency's decision making varies depending on the type of decision we are asked to review. In *Meyer*, we explained that

> [t]hese different approaches to our review of mixed questions of law and fact make it essential for counsel to search for and pinpoint the precise claim of error on appeal. If the claim of error lies with the agency's findings of *fact,* the proper question on review is whether substantial evidence supports those findings of fact. If the findings of fact are not challenged, but the claim of error lies with the agency's interpretation of the *law,* the question on review is whether the agency's interpretation was erroneous, and we may substitute our interpretation for the agency's. Still, if there is no challenge to the agency's findings of fact or interpretation of the law, but the claim of error lies with the *ultimate conclusion* reached, then the challenge is to the agency's application of the law to the facts, and the question on review is whether the agency abused its discretion by, for example, employing wholly irrational reasoning or ignoring important and relevant evidence. In sum, when an agency decision on appeal involves mixed questions of law and fact, care must be taken to articulate the proper inquiry for review instead of lumping the fact, law, and application questions together within the umbrella of a substantial-evidence issue.

710 N.W.2d at 219 (citations omitted).

Chapter 17A imposes a similar duty on agency decision makers. Section 17A.16(1) requires that findings of fact and conclusions of law be stated separately and that factual findings, "if set forth in statutory language, shall be accompanied by a concise and explicit statement of underlying facts supporting the findings." This requirement is consistent with "the commissioner's duty as the trier of fact to determine the

credibility of the witnesses, weigh the evidence, and decide the facts in issue." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). In the past, we have stated that

> the commissioner need not discuss *every* evidentiary fact and the basis for its acceptance or rejection so long as the commissioner's analytical process can be followed on appeal. So also have we held the commissioner's duty to furnish a reasoned opinion is satisfied if "it is possible to work backward . . . and to deduce what must have been [the agency's] legal conclusions and [its] findings of fact."

*Bridgestone/Firestone v. Accordino*, 561 N.W.2d 60, 62 (Iowa 1997) (citations omitted). However, when the commissioner only acknowledges that a factual dispute exists and then lumps together findings of fact, conclusions of law, and applications of law to fact, we do not feel that section 17A.16(1) has been satisfied. Combining all three elements of agency decision making in such a condensed, tangled manner makes for inefficient and ineffective judicial review of agency action. This is especially true in cases such as this one where the parties gave conflicting accounts to the commissioner and the commissioner's credibility assessments have an impact on the ultimate decision in the case. With these principles of judicial review of agency decision making in mind, we now address the respective claims of the parties.

Both parties agree that this case requires us to review, among other things, the commissioner's legal interpretation that the "would have been entitled" language in section 85.36 is inapplicable when an employee has worked a full pay period following an injury and is also inapplicable when the employee has been paid this amount for a year and a quarter. Burton and the commissioner both feel the emphasized language is only applicable when a claimant has not worked a full pay period. Hilltop argued to the district court that Burton was not "entitled"

to a raise of $1000 per month, and therefore, her earnings should be adjusted accordingly. The district court agreed with Hilltop, holding an "accounting error is not tantamount to an entitlement to the elevated wage to Hilltop's detriment" and that Burton's salary should be based on what she was "entitled" to receive, not what she actually received.

Deciding whether language contained in a statute applies to a dispute is clearly an interpretation of law. In order to properly review the agency's interpretation of section 85.36, including the definition of the term "gross earnings" referenced therein, we must first determine whether the legislature has clearly vested the commissioner with the authority to interpret section 85.36 and to determine when and how that section applies to a given dispute.

To conclude that the commissioner was "clearly vested" with the authority to interpret a statute, we

> must have a firm conviction from reviewing the precise language of the statute, its context, the purpose of the statute, and the practical considerations involved, that the legislature actually intended (or would have intended had it thought about the question) to delegate to the agency interpretive power with the binding force of law over the elaboration of the provision in question.

*Renda*, 784 N.W.2d at 11 (quoting Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 63 (1998)).

In *Mycogen Seeds*, we reviewed the commissioner's decision that section 85.36(9)(*c*), the apportionment statute, applied to a particular situation. 686 N.W.2d at 464, 466–67. In that case, we determined that the legislature had not delegated any special powers of interpretation to the agency. *Id.* at 464. Therefore, we reviewed the commissioner's decision that section 85.36(9)(*c*) was applicable under section

17A.19(10)(*c*) and would reverse if the decision to apply the apportionment statute were erroneous. *Id.* We ultimately agreed with the commissioner that the apportionment statute was applicable in the situation before the court. *Id.* at 467.

As in *Mycogen Seeds,* we feel the commissioner has not been clearly vested with the authority to determine whether or how sections 85.36 or 85.61(3) apply to a given dispute. Section 86.8(1) gives the commissioner the authority to adopt and enforce rules needed to implement the workers' compensation laws. However, this grant of rule-making authority does not give the commissioner authority to determine when portions of those laws are applicable. *See Renda,* 784 N.W.2d at 13 ("[W]e have not concluded that a grant of mere rulemaking authority gives an agency the authority to interpret *all* statutory language."). Therefore, we will substitute our own interpretation of sections 85.36 and 85.61(3) if we find the commissioner's interpretation was erroneous. Iowa Code § 17A.19(10)(*c*). We now turn to the question of whether the "would have been entitled" language applies to situations where the claimant works the customary hours for the full pay period in which the employee was injured. *See id.* § 85.36.

Section 85.36 reads:

> The basis of compensation shall be the weekly earnings of the injured employee at the time of the injury. Weekly earnings means gross salary, wages, or earnings of an employee *to which such employee would have been entitled had the employee worked the customary hours for the full pay period in which the employee was injured,* as regularly required by the employee's employer for the work or employment for which the employee was employed, computed or determined as follows and then rounded to the nearest dollar:
>
> . . . .

3. In the case of an employee who is paid on a semimonthly pay period basis, the semimonthly gross earnings multiplied by twenty-four and subsequently divided by fifty-two.

(Emphasis added.) "Gross earnings" is defined as "payments by employer to the employee *for employment*." *Id.* § 85.61(3) (emphasis added).

Disputes over the language of section 85.36 have typically involved situations where the general formula for calculating the employee's basis of compensation would have included weeks where the employee did not work "customary" hours that were "regularly required" by the employer. *See, e.g.*, *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 198–200 (Iowa 2010) (interpreting section 85.36 to determine whether employee's earnings in certain weeks were "customary"); *Griffin Pipe Prods. Co. v. Guarino*, 663 N.W.2d 862, 865–67 (Iowa 2003) (interpreting "would have been entitled" provision when employee did not work two of the thirteen weeks prior to his injury because employer's plant was closed for two weeks for regular maintenance). The purpose and focus of the "would have been entitled" language is to ensure "that a nonrepresentative week be excluded from the calculation of an employee's compensation rate." *Griffin Pipe*, 663 N.W.2d at 866–67.

We need not resolve the question of whether section 85.36's "would have been entitled" language applies when an employee works a full pay period during the week in which she was injured. Instead, we read section 85.61(3), which defines gross earnings, as containing a requirement that an employee's gross earnings only include that money the employee receives for employment.[3] Applying this language requires

---

[3]As with section 85.36, we are unable to find any indication that the legislature clearly vested the commissioner with the authority to interpret section 85.61(3), and therefore, we have the authority to correct any erroneous interpretations the commissioner may have made. Iowa Code § 17A.19(10)(*c*).

the commissioner to only include that money paid to the employee *for employment* in the employee's gross earnings.

When interpreting this statute in prior cases, we have required the commissioner to look beyond the numbers appearing on an employee's paycheck when determining the employee's weekly gross earnings under sections 85.36 and 85.61(3). In *Area Education Agency 7 v. Bauch*, 646 N.W.2d 398 (Iowa 2002), we addressed a situation where the amount of an employee's weekly gross earnings was at issue. In *Bauch*, a special education consultant who worked for a school had a contract that required her to work 198 days per year, the equivalent of approximately ten months. 646 N.W.2d at 399. Bauch was paid a total of $40,318.20 per year which, pursuant to her contract, was to be paid out in twelve equal monthly payments of $3359.85. *Id.* Bauch's salary was reduced $203.63 per day for each unexcused absence. *Id.*

Bauch filed a claim with the workers' compensation commission after slipping on a wet floor and breaking her elbow and wrist. *Id.* The commissioner determined that, because Bauch lost $203.63 per day for each day she missed, her daily earnings were $203.63, and therefore, under section 85.36(6), her gross weekly earnings were five times that amount ($1018.15). *Id.* at 399–400. The AEA petitioned for judicial review, and the district court reversed the commissioner. *Id.* at 400. The district court found that since Bauch was paid on a monthly basis, her weekly earnings must be calculated under section 85.36(4). *Id.* The district court then took the amount of Bauch's monthly paycheck ($3359.85), multiplied it by twelve and divided by fifty-two for a gross weekly earning total of $775.35. *Id.*

On appeal, we were required to interpret the same statutory provisions at issue in this case. *Id.* at 401. We held that the district

court correctly determined Bauch was paid on a monthly basis and that her weekly earnings should be calculated under section 85.36(4), as opposed to section 85.26(6). *Id.* at 402. However, we went on to hold that the district court erred in calculating Bauch's weekly benefits based solely on the amount shown on Bauch's monthly paychecks ($3359.85). *Id.* Since Bauch only worked ten months out of the year, she actually earned one-tenth of her annual salary ($4031.82) each month she worked. *Id.* Simply put, ten months out of the year, Bauch earned more than she was paid. Under sections 85.36(4) and 85.61(3), we held Bauch's weekly gross earnings should be calculated as the amount she *earned* each month she worked ($4031.82), multiplied by twelve and divided by fifty-two, or $930.43. *Id.* at 402–03.

By taking this approach in *Bauch*, we rejected an overly formulistic approach to the calculation of an employee's weekly earnings under sections 85.36 and 85.61. Instead of allowing the commissioner to simply cut and paste the amount shown on an employee's paycheck into the formula contained in the appropriate subsection of section 85.36, *Bauch* requires the commissioner to determine what an employee actually earns *for employment* each pay period and use that number to calculate weekly earnings. *Id.* at 402. By simply using the number written on the paycheck, the district court had "seemingly overlooked the statute's definition of 'gross earnings.'" *Id.* The same error occurred in this case.

Having interpreted sections 85.36 and 85.61 as requiring the commissioner to determine what an employee actually earns for employment, we now return to the facts of this case. In determining Burton's weekly earnings and her basis of compensation, the commissioner stated,

The parties dispute the correct wage calculation that should be applied in this case. The defendants assert that the correct wage should be calculated based on the wages they feel the claimant was entitled to rather than the wages that they paid the claimant as a result of an accounting error.

The commissioner then awarded benefits based on the $1000 per month raise, reasoning that it was irrelevant whether an error occurred because Hilltop "has been paying an employee wage for over a year and a quarter[] [and] [t]he claimant worked her full hours during each pay period." In denying the petition for rehearing, the commissioner stated, "Under the facts of this case, the claimant received recurring payments by the employer to the employee for employment. Those payments were used in calculation of the weekly earnings." As we have already discussed, section 85.61(3) requires more than "recurring" payments; those payments must also be earned through employment. Money received due to an accounting error would not be money that was earned for employment as the statute requires.

The commissioner acknowledged the dispute over Burton's salary, but it failed to make a finding on the matter. Instead, the commissioner simply listed the evidence supporting each side's position. For example, in the initial ruling, the commissioner stated, "The claimant worked her full hours during each pay period. . . . The claimant received the salary from the defendant, had a review of her performance by her supervisor at the higher wage rate and the claimant paid income tax based upon the receipt of the high wage rate." In ruling on the motion for rehearing, the commissioner stated, "The record shows the claimant was paid bimonthly with checks stamped with her employer's signature. The record shows also that the claimant was evaluated annually and was subject to frequent monitoring by her supervisor. Further the claimant's

salary which included the raise was within the mean average wage of food service supervisors according to the defendants['] own expert." Regarding Hilltop's position, the commissioner noted Hilltop's administrator

> testified that the clamant, as well as two other salaried employees, received the wrong rate of pay beginning in 2005. She testified that the claimant was given a raise in 2005 and was supposed to receive $1000 per year but was paid $1000 per month. She stated that the error was discovered after the claimant left her employment, when the claimant filed for unemployment. [The administrator] testified that she has not requested any reimbursement of the wages paid in error and did not inform the claimant of the error until after the claimant had filed a request for workers' compensation.

While these are relevant considerations for determining whether Burton's raise was an accounting error, a summary of evidence is not in and of itself a finding of fact and will not be reviewed as such.

Under chapter 17A, a court's task on judicial review is not to determine whether the evidence might support a particular factual finding; rather, it is to determine whether the evidence supports the finding made. *Meyer*, 710 N.W.2d at 218. The district court stated, "In this case, Ms. Burton received a higher monthly rate of pay due to an accounting mistake." As detailed above, there is evidence in the record to support such a factual finding. There is also evidence to support the opposite finding. What is critical under the structure set up in chapter 17A is that the commissioner never made such a finding to begin with. Therefore, when the district court determined the higher salary was due to an accounting mistake, "The district court exceeded the scope of permissible judicial review of agency decisions by making findings . . . that the commissioner never made, when the facts in the record necessary to make the finding supported two reasonable conclusions." *Meyer*, 710 N.W.2d at 225. Without a factual finding by the

commissioner as to which party's story was more credible, a court is left with nothing to review under chapter 17A.

The commissioner ultimately concluded that Burton's compensation should be based on the salary that she actually received. However, the findings of fact, conclusions of law, and application of law to fact are so interconnected that we are unable to determine whether the commissioner's final decision was based on his legal conclusion that a mistake on Hilltop's part was irrelevant because Burton had been overpaid "for over a year and a quarter," or a factual determination that Burton's pay raise was not in fact the result of an accounting error. Accordingly, we find it necessary to remand this case to the commissioner with instructions to make a factual determination as to whether Burton's $1000 per month raise was, as Hilltop claims, the result of an accounting error. Without such an explicit factual finding and credibility determinations, we are unable to conduct the review required by chapter 17A. If the commissioner determines the $1000 per month increase in Burton's paychecks was the result of an accounting error, then the increase was not a payment given to Burton "for employment" but was instead a payment given to her by accident. As such, it would not meet the definition of "gross earnings" under section 85.61(3) and could not, therefore, be included in Burton's weekly gross earnings under section 85.36. However, if the commissioner finds that the $1000 per month raise was not the result of an accounting error, then it would be money given to Burton "for employment" and therefore should be included in her gross earnings under section 85.61(3), and her weekly gross earning under section 85.36.

**B. Including Burton's Bonus in Her Gross Earnings.** Under section 85.61(3), the employee's gross earnings do not include "irregular

bonuses." The commissioner found Burton received "a regular annual bonus" of $270.71 on December 16, 2005. The commissioner divided this bonus by fifty-two to determine how much of the bonus Burton earned per week, which was $5.20, and then multiplied it by eleven. The commissioner used the number eleven because eleven of the thirteen weeks of employment preceding the foot injury occurred in 2005, and the commissioner concluded that for each of those eleven weeks, Burton earned one-fifty-second of her regular annual bonus. The commissioner did not add $5.20 per week to Burton's salary in January of 2006 because Burton did not receive a bonus in 2006.

The district court remanded the issue for further analysis in light of *Noel v. Rolscreen Co.,* 475 N.W.2d 666 (Iowa Ct. App. 1991). In *Noel*, the court of appeals held a bonus was not "regular" under 85.61(3) because it was "subject to a condition precedent, varie[d] in amount, and [wa]s not fixed in terms of entitlement or amount until late in the fiscal year." 475 N.W.2d at 668. In this case, the court of appeals found *Noel* was distinguishable because the bonus had already been paid and had been consistently paid in the past. The commissioner in this case did not discuss the factors identified in *Noel* and simply stated, "According to the testimony at the hearing this was part of a regular annual bonus that the claimant received . . . ."

The commissioner is tasked with finding facts in order to determine an employee's gross earnings. When an agency has been vested with the authority to find facts, it is also vested with the authority to apply the law to those facts. *Mycogen Seeds,* 686 N.W.2d at 465. When an agency has been clearly vested with the authority to apply law to fact, we will only disturb the agency's application if it is irrational, illogical, or wholly unjustifiable. *See Drake Univ. v. Davis,* 769 N.W.2d

176, 183 (Iowa 2009); *see also* Iowa Code § 17A.19(10)(*m*). In clarifying this standard, we have stated,

> A decision is "irrational" when it is "not governed by or according to reason." A decision is "illogical" when it is "contrary to or devoid of logic." A decision is "unjustifiable" when it has no foundation in fact or reason.

*Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 432 (Iowa 2010) (citations omitted).

With this standard in mind, we turn to the commissioner's application of section 85.61(3) to the facts of this case. Hilltop argues, and the district court found, the commissioner erred when he concluded Burton's bonus was regular without discussing the factors listed in *Noel*. In *Noel*, the court of appeals was reviewing the commissioner's decision that a bonus was irregular and was not part of an employee's gross earnings. 475 N.W.2d at 667. The employee in *Noel* was paid on an hourly basis, and under section 85.36(6), her weekly earnings were to be calculated "by dividing by thirteen the earnings, not including overtime or premium pay, of said employee earned in the employ of the employer in the last completed period of thirteen consecutive calendar weeks immediately preceding the injury." *Id.* The employee was injured on April 27, and the commissioner did not include the employee's anticipated Christmas bonus in her weekly earnings for the thirteen weeks prior to April 27. *Id.* In order to receive a bonus for a given year, an employee had to be an active employee on November 30 of that year. *Id.* The amount of the bonus was based on the number of years of continuous service and the employee's gross wages. *Id.* The bonus was voluntary and could be discontinued or altered by the employer at any time, for any reason. *Id.*

The court of appeals affirmed the commissioner's decision that the bonus was not "weekly earnings" under section 85.36 because it was not paid or received in the thirteen weeks prior to the injury. *Id.* at 667–68. Additionally, the court affirmed the commissioner's decision that the bonus was not "gross earnings" under the definition found in section 85.61 because it was "not a regular bonus." *Id.* at 668. Specifically, the court noted the bonus was "a bonus of varying amounts, and is dependent on several conditions for amount. It is subject to a condition precedent, varies in amount, and is not fixed in terms of entitlement or amount until late in the fiscal year." *Id.*

We believe the district court and Hilltop rely too heavily on *Noel* when reviewing the commissioner's decision that Burton's bonus was "regular." First, in *Noel*, the commissioner did not include the bonus in the employee's weekly earnings. *Id.* at 667. In this case, if the commissioner had found Burton's bonus was irregular, we would give that decision the same level of deference and would only reverse if the decision that the bonus was irregular were illogical, irrational, or wholly unjustified. Iowa Code § 17A.19(10)(*m*). Second, the court of appeals did not indicate that the factors in *Noel* were an exclusive or exhaustive list. *See Noel*, 475 N.W.2d at 668. We have only cited *Noel* on one previous occasion. *See Mycogen Seeds*, 686 N.W.2d at 469–70. In that case, we stated reliance on *Noel* was reasonable, and therefore, the commissioner could properly determine a penalty was not appropriate, but we did not say that *Noel* contained an exclusive and exhaustive list of factors for determining whether a bonus was "regular." *See id.*

In light of the applicable standard of review, we do not feel a strict reading of *Noel* is appropriate. The question before the district court was whether the commissioner's decision that Burton's bonus was "regular"

was irrational, illogical, or wholly unjustified. Iowa Code § 17A.19(10)(*m*). The factors listed in *Noel* were relevant to the commissioner's conclusion in that case. However, their relevance to any other case depends solely on the facts of that case. The true nature of the inquiry requires a reviewing court to look at those facts that were and were not considered by the agency in applying law to fact and then to determine whether, on the whole, the agency's application of law to fact was irrational, illogical, or wholly unjustified. Since no two cases present the same set of facts, we will not handcuff the agency by limiting its inquiry. So long as the application of law to fact is not illogical, irrational, or wholly unjustified, the agency's decision will be upheld on judicial review.

The commissioner relied on "the testimony at the hearing" to conclude Burton's bonus was regular. The testimony reveals that Burton was hired in December of 2002, and she received a bonus in 2003, 2004, and 2005. There is no indication of the amount of Burton's bonus in 2003, but in 2004 Burton's bonus was $200 and in 2005 it was $250 after withholding and $270.71 before. Sandra Ferguson, Burton's supervisor and the administrator of Hilltop, testified that the bonus was "A thank you for the past year's attentiveness or—just a thank you. Thank you for being part of the operation." When asked if management felt Burton was entitled to a bonus, Ferguson stated, "As a thank you for being part of the operation, yes." Burton received these bonuses even though Ferguson had to have "numerous discussions" with Burton about Burton's management style soon after Burton was hired. The commissioner did not include Burton's bonus for the weeks she worked in 2006 because Burton was not paid a bonus in 2006.

According to the testimony at the hearing, every full year Burton worked at Hilltop, she received a bonus. This bonus was paid despite the fact that Burton's supervisor had to have discussions about her work with her. It was also paid to Burton for being "a part of the operation." Burton's supervisor also testified that Burton was entitled to the bonus. These are all logical reasons that would justify the commissioner's determination that Burton's bonus was not irregular. Since the decision to include Burton's bonus in her gross earnings has a factual foundation, was governed by reason, and was not devoid of logic, the district court should have affirmed the commissioner on this issue. *See Sherwin-Williams*, 789 N.W.2d at 432. Accordingly, the district court's holding is reversed.

**V. Penalty Benefits Arising Out of Burton's Foot Injury.**

The commissioner imposed a $500 penalty for Hilltop's failure to include the $1000 per month in Burton's weekly earnings. The commissioner made it clear that the penalty was based on the failure to include the $1000 per month raise when calculating Burton's benefits and was not based on the failure to include the bonus. For seven and a half weeks, Hilltop paid Burton $402.18 per week instead of $547.10, for a total deficiency of $1086.90. The commissioner ordered a penalty of $500.

Hilltop claims that the issue of penalty benefits was not properly raised before the commissioner. We disagree. Burton's original petitions for both her foot and abdominal injuries indicate that Burton was seeking penalties under section 86.13. Penalties were discussed at the hearing in front of the deputy and in both parties' posthearing briefs. They were awarded in the arbitration decision. In its request for a rehearing, Hilltop did not argue that the issue of penalty benefits was not

properly before the deputy; instead, Hilltop argued the merits of the decision to award those benefits. The issue of penalty benefits was properly presented to the agency.

Iowa Code section 86.13 provides for penalty benefits. It reads, in pertinent part,

> If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the workers' compensation commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

Iowa Code § 86.13.[4] We have held that a reasonable cause or excuse

> "exists if either (1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits. A 'reasonable basis' for denial of the claim exists if the claim is 'fairly debatable.' "

*IBP, Inc. v. Burress*, 779 N.W.2d 210, 222 (Iowa 2010) (quoting *Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996)). " 'A claim is "fairly debatable" when it is open to dispute on any logical basis.' Whether a claim is 'fairly debatable' can generally be determined by the court as a matter of law." *Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 483 (Iowa 2007) (citation omitted). "[T]he reasonableness of the employer's denial or termination of benefits does not turn on whether the employer was right. The issue is whether there was a reasonable basis for the employer's position that no benefits were owing." *Keystone Nursing Care Ctr. v. Craddock*, 705 N.W.2d 299, 307–08 (Iowa 2005). If there was no reasonable basis for the employer to have denied the

---

[4]Section 86.13 was amended in 2009. 2009 Iowa Acts ch. 179, § 110. Any delay in benefits by Hilltop would have occurred prior to the 2009 amendment. Therefore, when discussing the issue of penalty benefits, we will continue to cite to the 2007 Code.

employee's benefits, then the court must "determine if the defendant knew, or should have known, that the basis for denying the employee's claim was unreasonable." *Rodda*, 734 N.W.2d at 483.

Hilltop believed Burton's salary had been artificially inflated by an accounting error. As noted above, the commissioner never made a factual finding on this issue. Without such a finding, we are unable to determine whether Hilltop had a "reasonable basis" to deny Burton her benefits. Resolution of this issue hinges on the factual finding of the commissioner on remand. Accordingly, we reverse the decision of the district court and remand to the district court with instructions to remand the case to the commissioner. On remand, we ask the commissioner to reconsider the penalty benefits issue in light of whatever factual findings the commissioner makes regarding Hilltop's belief that Burton was overpaid due to an accounting error.

## VI. Disposition.

When calculating Burton's basis of compensation, Hilltop used the salary it claims that it should have been paying Burton, rather than the salary it was actually paying her, which was $916.67 more per month. The commissioner used the salary Burton was actually paid and ordered Hilltop to pay benefits on that basis. The commissioner also awarded penalty benefits based on Hilltop's decision to calculate Burton's benefits based on what Hilltop felt Burton's salary should have been. The commissioner also determined that Burton's holiday bonus was a regular bonus that should have been included in Burton's gross earnings.

On judicial review, the district court found Burton's basis of compensation should only include the salary Burton was "entitled" to receive, and Burton was not entitled to the disputed $916.67 per month. Accordingly, the penalty benefits were reversed. The district court

remanded the case to the commissioner for further analysis of whether Burton's bonus was "regular." The remainder of the commissioner's decision was affirmed. Burton appealed the decision not to include the extra $916.67 per month for calculation of benefits, the remand for further consideration of whether the bonus was regular, and the reversal of the penalty benefits. Hilltop cross-appealed, claiming the district court erred in not setting aside the commissioner's determination regarding the extent of the foot injury, the compensable nature of the abdominal injury, and the permanent disability resulting from the abdominal injury. On the appeal, the court of appeals reversed the district court's ruling regarding the basis of compensation, but affirmed the district court on all other issues. On cross-appeal, the court of appeals affirmed.

On further review, we vacate the decision of the court of appeals and affirm in part and reverse in part the decision of the district court. We remand the case to the district court with the following instructions on judicial review: to remand the case to the commissioner for a factual determination as to Hilltop's claim that it accidentally overpaid Burton $916.67 per month; to affirm the commissioner's decision to include Burton's bonus in her weekly earnings; to reconsider the commissioner's imposition of a penalty in light of the factual findings regarding Hilltop's claim that it overpaid Burton; and to affirm the commissioner's determinations as to the cause, nature, and extent of Burton's injuries.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except Hecht, J., who concurs specially, and Mansfield, J., who takes no part.

**HECHT, Justice (concurring specially).**

I write separately to emphasize that the court's opinion amounts to a disavowal of the less demanding standard of judicial review applied in *Bridgestone/Firestone v. Accordino,* 561 N.W.2d 60, 62 (Iowa 1997). Although the opinion does not expressly say "*Accordino* is hereby disavowed," I believe disavowal has, as a practical matter, occurred.

The commissioner's ruling on the parties' motions for rehearing expressly determined that "[u]nder the facts of this case, [Burton] received recurring payments . . . for employment." The court's opinion today concludes the quoted language of the commissioner is not a sufficiently clear finding by the commissioner that the payments were not the result of a mistake by the employer. Under the *Accordino* standard of review, I believe this court would clearly have been required to reach a different conclusion. Under *Accordino*, "the commissioner's duty to furnish a reasoned opinion [is] satisfied if 'it is possible to work backward . . . and to deduce what must have been [the agency's] legal conclusions and [its] findings of fact.' " *Id.* at 62 (quoting *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 909 (Iowa 1987)); *see also Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 560–61 (Iowa 2010) (applying *Accordino* standard to "work backward" and ascertain implicit credibility findings in workers' compensation commissioner's decision).

If this court had applied the *Accordino* standard, I believe the commissioner's determination that Hilltop's recurring payments were "for employment" would clearly have sufficed as a finding of fact rejecting Hilltop's claim of overpayment. This belief is based on the context in which the commissioner's words appear in the ruling in close proximity following the reference to Hilltop's assertion that the claimed

overpayment was the consequence of a mistake. The commissioner's express determination that the payments by Hilltop to Burton were "for employment" also follows in close proximity within the ruling the finding that Hilltop delivered bimonthly paychecks throughout the period from January 2005 until April of 2006—a period during which Burton "was evaluated annually and was subject to frequent monitoring by her supervisor." Even more significant in the contextual understanding of the commissioner's determination that the recurring payments were "for employment" is the fact that this determination follows the commissioner's finding that the rate at which Burton was paid was "within the mean average of food service supervisors according to the defendants['] own expert." Thus, under the less demanding standard of review followed under the former *Accordino* standard, when read in context with the other language in the commissioner's ruling, I believe the determination that Hilltop's payments to Burton were "for employment" would have been viewed as an implicit but nonetheless clearly expressed finding of fact rejecting Hilltop's assertion that the $1000 per month raise was the result of a mistake and not "for employment."

But the court has concluded the less demanding *Accordino* standard should not be applied for very sound reasons. Foremost among them is the reality that the enterprise of "working backward" to divine facts the agency must have found and conclusions of law the agency likely made is, at best, problematic for courts exercising judicial review. I would strongly prefer to expressly disavow the *Accordino* standard to ensure this court consistently applies the more demanding standard announced in this case and eliminate the temptation to apply the more lenient *Accordino* standard when the agency has reached an outcome

preferred by a majority of the court while applying the more demanding standard when the agency has reached an outcome not favored by the majority.