# IN THE SUPREME COURT OF IOWA

No. 09–0427

Filed October 14, 2011

**EVERCOM SYSTEMS, INC.,**

Appellee,

vs.

**IOWA UTILITIES BOARD,**

Appellant,

and

**OFFICE OF CONSUMER ADVOCATE,**

Intervenor-Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

Evercom Systems, Inc., seeks further review from the court of appeals decision that reversed the district court decision that reversed the Iowa Utilities Board decision and imposition of a civil penalty. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED, AND CASE REMANDED.**

David J. Lynch and Mary Whitman, Des Moines, for appellant board.

Mark R. Schuling and Craig F. Graziano, Des Moines, for appellant consumer advocate.

Bret A. Dublinske of Gonzalez, Saggio, & Harlan LLP, West Des Moines, for appellee.

**ZAGER, Justice**.

Evercom Systems, Inc., seeks further review of the court of appeals decision reinstating a civil penalty the Iowa Utilities Board (Board) imposed for a "cramming" violation based on improper billing for collect telephone calls. The issue in this case concerns the proper construction of Iowa Code section 476.103 (2005) and Iowa Administrative Code rule 199—22.23 and what actions constitute telecommunications cramming under these provisions. The Board determined that Evercom committed a "cram" when it billed a customer for collect calls he did not accept. It is our role to determine whether the Board complied with the Iowa Administrative Procedure Act in its adjudication of the claim against Evercom. Because we determine that Evercom's actions could not constitute a cram under the rules promulgated by the Board, we vacate the court of appeals decision, which found a violation of section 476.103, and affirm the district court's order reversing the agency's decision and imposition of a civil penalty.

## I. Background Facts and Proceedings.

Evercom provides telephone services to inmates in over 2900 correctional facilities throughout the country, including the Bridewell Detention Center (Bridewell) in Bethany, Missouri. These telephone systems are designed with optional features to prevent various types of fraud. Each correctional facility is responsible for selecting its own optional features. The Bridewell system included a feature called "Dial Tone Detection" (DTD), which was designed to prevent a rare type of fraud called "glare." Glare fraud occurs when one caller dials into a telephone number associated with a particular telephone line (called a trunk) at the same time a caller is dialing out over the same trunk. If the timing and circumstances are right, the two callers will simultaneously

seize the ends of a single trunk, and the charges will be billed to the number being dialed out over the trunk rather than to either of the persons on the call, even though the owner of the outgoing number will never actually be involved in the call.

On January 24, 2006, an inmate at Bridewell placed five collect calls to Quality Services Corporation, a Des Moines business owned by Ken Silver. The next day, Silver received a telephone message from Evercom informing him that over fifty dollars of collect calls had been accepted by his business line and that Evercom was placing a temporary block on his line. Silver immediately attempted to contact Evercom about the charges by both phone and fax. On January 30, Silver was finally able to speak with an Evercom representative. He denied accepting any collect calls or having any knowledge about the collect calls. Silver told Evercom that all calls to his business are directed to a central operator who did not receive or accept any collect calls from a correctional facility. Evercom assured Silver it would investigate the nature of the collect calls and report back to him within seven to ten days. However, one day after receiving the complaint, Evercom sent Silver a form letter stating that "[a]fter a thorough investigation" Evercom found no system deficiencies that would create inaccurate billing and that Evercom would not remove the charges. Silver never received this letter as it had apparently been sent to an incorrect address.

Silver's local telephone company billed him $78.21 for the collect calls on behalf of Evercom. Over the next several weeks, Silver unsuccessfully attempted to have Evercom remove the charges from his bill. Finally, on February 27, 2006, Silver reported his complaint to the Iowa Attorney General.

After Silver's complaint in late February, Evercom undertook a more thorough investigation of its equipment at Bridewell. At the conclusion of its investigation, Evercom concluded the calls were not made to Silver's business, but were the result of glare fraud. Evercom ordinarily relies on dial tone detection to prevent glare fraud at Bridewell, and Bridewell did have DTD as part of its telephone system. However, the DTD system was apparently turned off during regular maintenance in late January, and a technician forgot to turn it back on. After determining that the charges were incurred as a result of glare fraud perpetrated by an inmate and an outside third party, Evercom credited Silver's account on March 22, 2006, eight weeks after Silver's first complaint.

Silver's informal complaint was forwarded to the Board on March 30, 2006. Board staff investigated the complaint and made no finding as to the presence or absence of a statutory violation, accepted the explanation of third-party fraud, and stated that the credit issued to Silver was an adequate remedy. The Office of Consumer Advocate (OCA) petitioned the Board for a determination that Evercom had committed a violation of a statute or rule regarding cramming and requested that the Board impose a civil penalty. The Board determined there were reasonable grounds for further investigation and assigned the matter to an administrative law judge (ALJ) for a formal proceeding.

The ALJ found it was undisputed that Silver did not receive or accept the collect calls from Bridewell. Further, the ALJ concluded "there is no question that a cramming violation occurred and that Evercom violated Iowa Code section 476.103 and [rule 199—22.23]" when it billed Silver for five unauthorized calls. The ALJ's proposed decision included a $2500 civil penalty. Evercom appealed the proposed

decision to the Board. The Board affirmed the ALJ's decision that Evercom committed a cramming violation under Iowa Code section 476.103 and rule 199—22.23 and assessed a $2500 civil penalty.

Evercom petitioned for judicial review, claiming among other things, that collect calls are not "covered calls" under rule 199—22.23, that there was no unauthorized change in "telecommunication service" as defined by the rules, and that the mistake in billing found in this case does not constitute cramming as defined in the statute or the rules. Therefore, Evercom claimed the Board violated numerous provisions of the Iowa Administrative Procedures Act when it found Evercom liable for cramming. After a hearing, the district court found that section 476.103 and rule 199—22.23 require a two-step analysis in which the Board must separately determine a service provider's liability before determining a civil penalty and that the Board had "mixed the two-step analysis into one step." The district court found the Board misinterpreted the law when it considered factors in the liability phase that were only to be considered in the penalty phase. The district court then made its own legal interpretations and concluded that because the definition of cramming under rule 199—22.23 excludes the acceptance of collect calls, the only issue was whether Silver accepted the calls. Since the district court determined Evercom reasonably believed Silver authorized acceptance of the calls at the time of billing, no cram occurred, no statute or rule was violated, and therefore the civil penalty should be rescinded.

The Board and the OCA appealed. We transferred the case to the court of appeals. In a split decision, the court of appeals reversed the district court and reinstated the civil penalty levied by the Board. The court of appeals concluded the Board engaged in the proper two-step

analysis. The court of appeals also concluded that Evercom's argument as to its reasonable belief that the calls were authorized was without merit as neither the statute nor the implementing rules include an intent requirement for a cramming violation to occur. Evercom filed an application for further review, which we granted.

## II. Standard of Review.

Iowa Code section 17A.19(10) governs judicial review of agency decision making. *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010). We will apply the standards of section 17A.19(10) to determine whether we reach the same results as the district court. *Id.* "The district court may grant relief if the agency action has prejudiced the substantial rights of the petitioner, and the agency action meets one of the enumerated criteria contained in section 17A.19(10)(*a*) through (*n*)." *Id.*; *see also* Iowa Code § 17A.19(10). The rules an agency promulgates represent the agency's interpretation of the statutes the agency is assigned to administer. *Office of Consumer Advocate v. Iowa Utils. Bd.*, 744 N.W.2d 640, 643 (Iowa 2008). If authority to interpret specific terms in a statute has been clearly vested with an agency, then "we must defer to the agency's interpretation and may only reverse if the interpretation is 'irrational, illogical, or wholly unjustifiable.' " *Renda*, 784 N.W.2d at 10 (quoting Iowa Code § 17A.19(10)(*l*)). However, if the legislature has not clearly vested authority to interpret the provision of law with the agency, then the court must disregard any interpretation by the agency that it finds erroneous. Iowa Code § 17.19(10)(*c*). The legislature may explicitly vest the authority to interpret an entire statutory scheme with an agency. *Renda*, 784 N.W.2d at 13. However, the fact that an agency has been granted rule making authority does not "give[] an agency the authority to interpret *all* statutory language." *Id.*

We have therefore noted that "broad articulations of an agency's authority, or lack of authority, should be avoided in the absence of an express grant of broad interpretive authority." *Id.* at 14. An agency can be vested with the authority to interpret a statutory provision "when the statutory provision being interpreted is a substantive term within the special expertise of the agency." *Id.*

With these principles in mind, we must now determine the standard of review for the Board's interpretation of the term "unauthorized change in service" under Iowa Code section 476.103, and the Board's interpretation of the definition of "cramming" as that term is defined in Iowa Administrative Code rule 199—22.23(1). Section 476.103(3) requires the Board to "adopt rules prohibiting an unauthorized change in telecommunication service." While this command from the legislature is not an explicit grant of the authority to interpret the term "unauthorized change in telecommunications service," *see Renda*, 784 N.W.2d at 13, we have held that the rule making requirement contained in section 476.103 "evidences a clear legislative intent to vest in the Board the interpretation of the unauthorized-change-in-service provisions in section 476.103." *Office of Consumer Advocate*, 744 N.W.2d at 643. The term "unauthorized change in service" is a "substantive term within the special expertise of the agency" and, therefore, we will only reverse the agency's interpretation of that term if it is irrational, illogical, or wholly unjustifiable. *Renda*, 784 N.W.2d at 14.

We are also required to review the Board's interpretation of rule 199—22.23, a rule that it promulgated pursuant to section 476.103. Section 17A.19(10)(*l*)'s judicial review provision applies to any "interpretation of a provision of law" an agency performs. Under chapter

17A, the definition of the term "provision of law" includes an agency rule. Iowa Code § 17A.2(10). We have already noted the "clear legislative intent to vest in the Board the interpretation of the unauthorized-change-in-service provisions in section 476.103." *Office of Consumer Advocate*, 744 N.W.2d at 643. We will therefore review the Board's interpretation of the rules it has promulgated pursuant to section 476.103 under the same deferential standard we used to review the Board's interpretation of the statute itself, and we will only reverse the Board's interpretation of rule 199—22.23 if it is an irrational, illogical, or wholly unjustifiable interpretation of that rule. *Renda*, 784 N.W.2d at 10.

### III. Applicable Statutory Framework.

Before addressing the particular arguments in this matter, a brief summary of the applicable statutory authorities will ground the parties' arguments. Following deregulation of interexchange services in 1996, the Iowa Attorney General's Consumer Protection Division began to notice a significant increase in complaints of "slamming" (unauthorized changes in a customer's preferred carrier) and "cramming" (unauthorized addition of services to the customer's bill). 22 Iowa Admin. Bull. 1697 (May 17, 2000). In response, the legislature passed section 476.103, which allows the Iowa Utilities Board to "adopt rules to protect consumers from unauthorized changes in telecommunications service." Section 476.103(2)(*a*) defines "change in service" as "the addition or deletion of a telecommunications service for which a separate charge is made to a consumer account." Section 476.103(3) requires the Board to create procedures a carrier must use to verify a customer's change-in-service request.

In August 1999, the Board published a "Notice of Intended Action," which proposed a variety of definitions and verification procedures intended to implement 476.103, and requested comments from any interested parties. 22 Iowa Admin. Bull. 189–90 (Aug. 11, 1999). This notice included the following definition:

> "Cramming" means the addition or deletion of a product or service for which a separate charge is made to a telecommunications consumer account without the verified consent of the affected consumer. Cramming does not include the addition of extended area service to a customer account pursuant to board rules, even if an additional charge is made.

*Id.* at 192. During the comment period, AT&T/Sprint submitted a comment expressing concern "that the definitions [did] not appear to address authorization by use." 22 Iowa Admin. Bull. 1698 (May 17, 2000). These are services that are requested by the customer and for which "use [of] the service indicates authorization." *Id.* Examples given of these services were " 'dial-around' services such as '10–10–XXX,' directory assistance, operator-assisted calls, [and] acceptance of collect calls." *Id.* The Board agreed "that additional language is necessary to ensure that such services that are initiated or requested by the customer are not inaccurately characterized as cramming." *Id.* The final, enacted version of the rule defined cramming as:

> "*Cramming*" means the addition or deletion of a product or service for which a separate charge is made to a telecommunication customer's account without the verified consent of the affected customer. Cramming does not include the addition of extended area service to a customer account pursuant to board rules, even if an additional charge is made. Cramming does not include telecommunications services that are initiated or requested by the customer, including dial-around services such as "10–10–XXX," directory assistance, operator-assisted calls, acceptance of collect calls, and other casual calling by the customer.

Iowa Admin. Code r. 199—22.23(1) (2000). The regulations promulgated in 2000 only prohibited "unauthorized changes in telecommunications service," but did not specifically prohibit "slamming" and "cramming," even though those terms were defined in the new rule. *Id.* r. 199—22.23(1)–(2). However, since section 476.103 bans unauthorized changes in service, specifically banning cramming would have been unnecessary, as the definition of cramming found in rule 199—22.23(1) is "consistent with the legislature's definition of 'change in service.'" *Office of Consumer Advocate*, 744 N.W.2d at 644. If Evercom's actions meet the definition of cramming, then a violation of section 476.103's ban on unauthorized changes in service has occurred, and Evercom is liable.[1]

## IV. Discussion.

The Board affirmed that Evercom incorrectly billed Silver's business for collect calls it did not receive. This is not in doubt and has never been disputed during these proceedings. What is at issue is whether an error in billing for collect calls can be considered a cram under the definition found in rule 199—22.23(1). Before the ALJ, Evercom argued that collect calls were "outside the scope" of the rule. The ALJ dismissed this contention and determined "[t]he definitions in

---

[1]A different version of rule 199—22.23(2), which explicitly banned cramming and slamming, rather than the more general ban on "unauthorized changes in service," did not go into effect until January 25, 2006. 28 Iowa Admin. Bull. 1042, 1049 (Dec. 21, 2005) (codified as amended at Iowa Admin. Code r. 199—22.23(2) (2006)). In its appearance before the Board and its petition for judicial review, Evercom argued that because the collect calls took place on January 24, 2006, it could not be held liable for cramming because cramming was not expressly prohibited by the version of rule 199—22.23 in effect on January 24, 2006. Since we resolve this case based on the definition of cramming that was promulgated in 2000 and for which we have previously determined constituted a prohibited unauthorized change in service in 2000 and beyond, including January 24, 2006, this argument is without merit and we give it no further consideration.

the rule cover Evercom and its actions in this case" because "causing unauthorized charges to be placed on a customer's telephone bill" is cramming under the rule. To support this contention, the ALJ offered only the Board's statement that it felt unauthorized billing of collect calls was prohibited by the statute and an order by the Board assigning an ALJ in another case in which the Board reached the same conclusion. *See Office of Consumer Advocate v. ILD Telecommunications, Inc.*, FCU–06–39, 2006 WL 2049772 (Iowa Utils. Bd. July 17, 2006).

Evercom has maintained from the commencement of these proceedings that the acceptance of collect calls was beyond the scope of the definition of cramming found in rule 199—22.23(1). Following the Board's order affirming the cramming violation, Evercom sought judicial review, noting that the definition of cramming specifically excluded the acceptance of collect calls, and therefore, Evercom was entitled to relief under section 17A.19(10)(*l*) and various other subsections. The district court determined that only "accepted" collect calls were excluded from the definition of cramming and, therefore, analyzed whether Evercom could have "reasonably and logically" believed that the collect calls to Silver were in fact accepted by him. The court of appeals agreed and placed similar importance on whether Silver accepted the calls, stating "[a]ll that mattered was whether Silver authorized the collect calls that were billed to his account." While our past cases may have closely examined the distinction between "verified consent" of the customer's identity and actual authorization of the charges, this case presents no such issue. *See Office of Consumer Advocate*, 744 N.W.2d at 645–46. The issue before us is not whether the calls were verified, authorized, or apparently accepted; it is whether billing a customer for accepting a collect call fits within the definition of cramming. To that end, we find an

interpretation of rule 199—22.23(1) that hinges on whether the call was in fact accepted to be unacceptably narrow.

The rules that guide our interpretation and construction of statutes are "nearly identical" to the rules that guide our interpretation and construction of agency rules. *Id.* at 643. When the meaning of a statute or rule is clear, we will not search for meaning beyond the express terms of the statute or rule. *Id.* Here, the Board has already defined the term cramming by adopting a rule through the notice and comment rule making process. *See* Iowa Admin. Code r. 199—22.23(1). Since section 476.103 clearly vests the power to make rules interpreting that section with the Board, we would only invalidate the Board's rule defining cramming if it were an " 'irrational, illogical, or wholly unjustifiable interpretation of a provision of law.' " *See Office of Consumer Advocate*, 744 N.W.2d at 643 (quoting Iowa Code § 17A.19(10)(*l*)). Neither party has challenged the validity of the definition promulgated in rule 199—22.23(1), and we feel the rule itself is valid as a logical interpretation of section 476.103. The issue is whether the Board's interpretation of the rule can withstand the review required by section 17A.19(10)(*l*). We will now examine whether cramming, as defined in rule 199—22.23(1), can include the mistaken billing of a customer for collect calls.

Cramming is the addition of a product or service to a customer's account, for which a separate charge is made, without that customer's verified consent. Iowa Admin. Code r. 199—22.23(1). If the rule did not include any exceptions, then billing a customer for a collect call he did not accept may fit the definition, as it would be a separate charge made without the customer's verified consent. However, rule 199—22.23(1), as promulgated by the Board, specifically excludes certain charges from the

definition of cramming. Cramming involves adding services without obtaining verified consent. The rule recognizes, however, that certain services—in this case, collect calls—are initiated by the customer, and therefore should be exempt from the verification requirements. *Id.* r. 199—22.23(1). The Board itself noted that the exclusion was necessary in order to ensure that billing for charges and services a customer requests through "casual calling" were "not inaccurately characterized as cramming." 22 Iowa Admin. Bull. 1698 (May 17, 2000).

This exception is wholly logical when the nature of these services is considered. Rule 199—22.23(2) requires carriers to obtain verified customer consent before adding services or charges to telephone bills. Consent can be verified by electronic authorization, written authorization, or through a third-party verifier. Iowa Admin. Code r. 199—22.23(2)(*a*)(1)–(3). For certain changes, internal records can be used to verify a change to an existing account.[2] *Id.* r. 199—22.23(2)(*a*)(4). The Board found it would be undesirable to require carriers to obtain verification before they permit a customer to accept a collect call, dial information, or use directory assistance, and therefore decided not to include adding these types of customer-requested services

---

[2]Another method of verification for "changes in service resulting in additional charges to existing accounts only" went into effect on January 25, 2006. 28 Iowa Admin. Bull. 1042, 1049 (Dec. 21, 2005). Under this method of verification, which is codified as Iowa Administrative Code rule 199—22.23(2)(*a*)(5) (2009), a service provider can establish a valid customer request "through maintenance of sufficient internal records." *Id.* Both the Board and the Office of Consumer Advocate point to the rule 199—22.23(2)(*a*)(5) and claim that adequate verification of a collect call is required in order to avoid cramming. Even if the January 2006 rule change was in place, it still only refers to the verification required for a "change in service." As this opinion discusses, billing a customer for a collect call is not a "change in service" or a cram under rule 199—22.23(1), and therefore no verification is required. The Board and the OCA also point to rule 199—22.23(2)(*a*)(5)'s verification requirements for additional charges for "one or more specific calls" and argue that this language means collect calls can be included in the definition of cramming. However, this language was not added to the rule until 2007 and, therefore, has no bearing on the facts of this case. 29 Iowa Admin. Bull. 1662, 1663 (June 6, 2007).

to a customer's bill in the definition of cramming. *See* 22 Iowa Admin. Bull. 1698 (May 17, 2000). This policy is clearly reflected in the plain language of rule 199—22.23(1), which excludes these services from the definition of cramming. If the Board now wishes to include these services within the definition of cramming, it should use the rule making process to redefine cramming by eliminating the exceptions that are currently listed and not resort to "[m]aking policy by ad hoc decisions on a case-by-case basis." *Office of Consumer Advocate*, 744 N.W.2d at 646.

While the district court focused on whether Evercom reasonably believed Silver had accepted collect calls, and the OCA and court of appeals focused on whether the calls were actually accepted, we feel a proper reading of the rule excludes all disputes regarding billing for collect calls from the definition of cramming. If the rule were read to only exclude those calls which were actually accepted, it would be stripped of its meaning. Collect calls that are rejected are never billed to a customer's account at all, and therefore, cramming allegations could never arise to begin with. The plain language of the rule excludes billing a customer for the acceptance of a collect call from the definition of cramming.

As Evercom states in its brief, "even casual telephone users know[] the purchase of basic local exchange service makes it possible to receive collect calls." Silver never complained that his business line did not have the ability to accept collect calls; he simply asserted that he had not accepted any collect calls. Evercom also recommended Silver contact his local telephone company and request a collect call block in order to ensure he would not be a victim of glare fraud in the future. These facts indicate Silver's business already had the ability to receive collect calls and that Evercom was not responsible for adding any such service. From Evercom's point of view, it appeared as though Silver had

requested the service by agreeing to accept a collect call. This is the nature of a collect call. The fact that the appearance of acceptance was brought about by third-party fraud does not change the text of rule 199—22.23, nor the reasoning behind its exceptions. The decision to bill a customer for collect calls is not cramming under the definition found in rule 199—22.23(1). When the Board determined Evercom committed a cram under the facts of this case, and as that term is defined in rule 199—22.23(1), its decision was "irrational, illogical, or unjustifiable under Iowa code section 17A.19(10)(*l*)." *Office of Consumer Advocate*, 744 N.W.2d at 641. The Board's determination violated chapter 17A and is therefore invalid.

## V. Disposition.

The ALJ proposed, and the Board affirmed, that Evercom committed a cram in violation of rule 199—22.23(2) and Iowa Code section 476.103 when it erroneously billed Silver for collect calls he never received or accepted. We disagree. The acceptance of collect calls is one of the enumerated services that are explicitly excluded from the definition of cramming as the Board has defined it in its own rules. Cramming, as defined in rule 199—22.23(1), cannot include the mistaken or improper billing of collect calls, particularly when it is the result of third-party fraud. When the Board concluded it did, it rendered a decision that was irrational, illogical, or wholly unjustifiable in violation of section 17A.19(10)(*l*). As such, the district court properly invalidated the Board's decision and rescinded the civil penalty. We remand to the district court for remand to the Board for dismissal of this action.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED, AND CASE REMANDED.**

All justices concur except Mansfield, J., who takes no part.