# IN THE COURT OF APPEALS OF IOWA

No. 13-1380
Filed October 29, 2014

STACY JORDAN,
    Petitioner-Appellant,

vs.

EMPLOYMENT APPEAL BOARD,
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Wapello County, Lucy J. Gamon, Judge.

A former employee appeals from the district court's decision on judicial review affirming the Employment Appeal Board's denial of unemployment benefits. **AFFIRMED.**

John S. Allen of the Clinical Law Programs of the University of Iowa College of Law, and Calvin Dane, Andy Giller, and Aja Oyegunle, Student Legal Interns, Iowa City, for appellant.

Rick Autry of the Employment Appeal Board, Des Moines, for appellee.

Heard by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Stacy Jordan appeals the district court's denial of her petition for judicial review, which sought to reverse the decision of the Employment Appeal Board (EAB) denying her unemployment benefits. Jordan asserts on appeal the district court erred in affirming the EAB's decision because the agency failed to prove she was discharged for misconduct and the administrative law judge failed to explain the basis for her factual findings. Because we find specific credibility determinations were not required to be set out in the agency's ruling and substantial evidence supports its decision, we affirm the district court's ruling.

### I. Scope and Standards of Review.

It must first be noted that our review of final agency action is "severely circumscribed." G*reenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 839 (Iowa 2002); *Sellers v. Emp't Appeal Bd.*, 531 N.W.2d 645, 646 (Iowa Ct. App. 1995). Nearly all disputes are won or lost at the agency level; the cardinal rule of administrative law is that judgment calls are within the province of the administrative tribunal, not the courts. *See id.*

Iowa Code section 17A.19(10) (2013) governs judicial review of an administrative decision. *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 36 (Iowa 2012). If the agency action prejudiced the petitioner's substantial rights, and the action meets one of the criteria listed in section 17A.19(10), the district court may grant relief. *Evercom Sys., Inc. v. Iowa Utils. Bd.*, 805 N.W.2d 758, 762 (Iowa 2011). We apply the standards set forth in section 17A.19(10) to determine whether our conclusion matches the district

court's result. *Id.*; *City of Des Moines v. Emp't Appeal Bd.*, 722 N.W.2d 183, 189 (Iowa 2006).

Our standard of review depends upon the petitioner's challenge to the agency's decision. *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012). If the agency is clearly vested with the authority to make fact-findings on an issue, then we may disturb those findings on judicial review only if they are unsupported by substantial evidence when reviewing the record as a whole. *Id.* "Substantial evidence" is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). We judge the agency's findings in light of the relevant evidence on record that may detract from or support it. *Id.* § 17A.19(10)(f)(3). Even if the evidence on record could lead a reasonable fact finder to a different conclusion, we are not called to decide if the record supports a different finding; rather, our review is limited to determining whether the record supports the finding actually made by the agency. *IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 632 (Iowa 2000). "Accordingly, the district court and the appellate court should not consider the evidence insubstantial merely because the court may draw different conclusions from the record." *Gits Mfg. Co. v. Frank*, ___ N.W.2d ___, ___, 2014 WL 5286513, at *2 (Iowa 2014).

## II. Background Facts and Proceedings.

Tenco Industries, Inc. provides services to persons with disabilities, including assisted-living residential housing. Petitioner Stacy Jordan began working for Tenco in 1998 as a residential instructor.

On March 8, 2012, Jordan was given a "counseling statement," a written statement that Tenco considered the equivalent of a verbal warning. The statement indicated Jordan had committed three violations: "Inappropriate Behavior," "Rudeness to Individuals/Parents/Guardians, etc.," and "Insubordination." The statement described various instances and behaviors on Jordan's part that her supervisors deemed unacceptable, including that while Jordan's client logs had noted she was having problems with a client, Jordan did not "approach[] the coordinators about this problem[]" to try to "remedy the situation." The statement laid out changes Jordan was to make, and it noted she would be assigned to work in a different house. The statement further specified: "Possible consequences: If [Jordan's] behavior continues it will result in more disciplinary action which could mean termination." Jordan signed the statement on March 8, acknowledging she had "read and underst[ood] this Counseling Statement" and that she also understood her "signature verified that the issues were addressed."

Jordan's work location was changed to a different Tenco residential house "with the hopes that . . . the change in staff would help ease the combativeness of the [other] one." However, about two weeks later, Jordan received a second written counseling statement. Four violations occurring March 21 were indicated on the statement: "Unsatisfactory Performance," "Violation of Company Policies

& Procedures," "Rudeness to Individuals/Parents/Guardians, etc.," and "Failure to Follow Instructions." The statement referenced staff reports that Jordan had failed to follow Tenco's policies concerning writing incident reports, for which she was previously counseled. The statement also included a report that Jordan had refused to help a client "clean up himself who had soiled himself and that she then had a 'negative' attitude toward him." As a result, Tenco suspended Jordan for one day without pay, and the statement specified that "[a]ny further infractions could lead to termination." Jordan refused to sign the statement, explaining in writing that she felt she had "not been rude to any of [the] individuals [she] care[d] for" and that she had "performed [her] job's responsibilities to the best of [her] abilities."

Two weeks later, it was reported Jordan had left a client in soiled undergarments "for over an hour" and, "[w]hen asked about changing him, [Jordan] stated, 'I will just wait for his shower because I don't want to clean him up twice.'" It was also reported Jordan would tell that same client to return to his room "anytime the individual would come out of his room." A third written counseling statement for these violations was issued to Jordan on April 6, 2012, stating "[t]hese behaviors are both neglecting an individual's care and restricting his rights" and that "[a]s of today, [Jordan's] employment at Tenco is terminated."

Jordan sought unemployment benefits, and in May 2012, Iowa Workforce Development issued its decision finding Jordan was eligible to receive benefits. Tenco appealed, asserting Jordan's employment was terminated for misconduct and her request for benefits should be denied.

Hearings in June and August were held before an administrative law judge (ALJ). There, two witnesses for Tenco testified, essentially repeating the reasons stated in the written statements as the basis of Tenco's finding of misconduct on the part of Jordan and its termination of her employment. Jordan testified and defended her conduct, testifying she felt she had handled herself appropriately based upon how she had been previously trained and Tenco's policies. She also denied ever stating she was leaving the client in soiled undergarments because she did not want to clean him up twice and that she made the client stay in his room. Finally, Jordan argued Tenco failed to follow its own policies for investigating claims of abuse or neglect and in terminating her employment.

In response to Jordan's testimony, Tenco's employee witness testified that Jordan's leaving the client in soiled undergarments "was not viewed necessarily as abuse but as . . . denial of [the client's] right to be treated with dignity." Tenco's employee witness admitted Tenco had not done an investigation of the final incident, but she testified the client was non-verbal, so the client could not give her a statement. She testified she had obtained a written statement from the worker training with Jordan that night. Though the statement was not admitted into evidence, the employer's witness read the statement, dated April 4, 2012, into the record:

> [Jordan left the client in] a messy Depends for an hour before his shower, wouldn't let him go to his room, said he would take his clothes off. After his shower told him to go to bed around 8:00 or 8:30 p.m. He would come out and she told him to go back to bed.

The witness testified that according to Tenco's policies, leaving a client

in a messy Depends is not treating them with dignity. Also the individuals have the right to move about freely in their home. They are to be as independent as possible to live in their homes so restricting him to his room was not allowing him his right to move about freely in his home.

The witness admitted the trainee's written statement did not include Jordan's statement she was not cleaning up the client twice. Jordan denied the witness's claims.

On August 29, 2012, the ALJ issued its ruling finding in favor of Tenco. The ALJ essentially found Tenco's witnesses more credible than Jordan, finding truthful all of the reported accusations in the three counseling statements, but for the one claim Tenco itself found was false. The ALJ specifically found that, under "[Tenco's] policy, and basic human decency, [Jordan's] actions failed to treat the client with dignity and respect." Based upon these factual findings, the ALJ found that Jordan

was warned about her behaviors, but it appears she disregarded those warnings. Her treatment of the client April 3, 2012, was unacceptable, inappropriate, and unprofessional. Consequently, the [ALJ] concludes [Jordan's] conduct demonstrated a willful disregard of the standards of behavior the employer has the right to expect of employees and shows an intentional and substantial disregard of the employer's interests and the employee's duties and obligations to the employer. The employer has met its burden of proving disqualifying job misconduct. . . . Therefore, benefits are denied.

Jordan appealed the decision of the ALJ to the EAB, and the EAB affirmed the ALJ's decision, adopting the ALJ's factual finding and legal conclusions as its own. Jordan's request for a rehearing was denied.

Jordan filed a petition for judicial review of the EAB's decision in January 2013. She asserted the EAB's decision was not supported by substantial

evidence because Tenco failed to establish misconduct. She asserted Tenco's failure to specify rules and policies she allegedly violated and to submit supporting documentation of its allegations fell short of the statutory definition of misconduct, viewing the record as a whole.

Following arguments on her petition, the district court entered its ruling affirming the EAB's decision. The court found Tenco's hearsay evidence was admissible and "indicia of its reliability was found through the record." The court noted that although "Jordan's testimony contradicted [the] statement, she did not object to its admissibility at the time, nor did she cross examine the employer concerning this statement." The court found the hearsay statement was "not the sort of allegation an employer would be likely to make lightly" and the "believability of the hearsay statement is further enhanced by reason of [Jordan's] prior conduct in the weeks leading up to her termination." The court ultimately concluded the hearsay statement met the "necessary levels of trustworthiness, credibility, and accuracy," allowing the ALJ to rely upon it in making its decision. Additionally, the court found the ALJ was not required to make specific credibility findings in its ruling, and the ALJ essentially finding Jordan's testimony was not credible did not warrant a finding that substantial evidence did not support the EAB's decision.

Jordan now appeals, arguing the district court erred in affirming the EAB. She asserts the same issues raised before the district court, challenging the ALJ's reliance on the hearsay statement and the ALJ's lack of specific credibility findings. We address her arguments in turn.

### III. Discussion.

### A. Credibility.

We start with Jordan's argument that the district court erred in finding the agency was not required to specifically set forth its credibility findings. As noted by Jordan, Iowa Code section 17A.16(1) provides that the agency "decision shall include an explanation of why the relevant evidence in the record supports each material finding of fact."

> This duty on the part of the agency is intended to allow a reviewing court "to ascertain effectively whether or not the presiding officer actually did seriously consider the evidence contrary to a finding, and exactly why that officer deemed the contrary evidence insufficient to overcome the evidence in the record supporting that finding." Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 42 rptr. cmt. (1998) . . . ; *accord Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 510 (Iowa 1973) ("[The commissioner's] decision must be sufficiently detailed to show the path he has taken through conflicting evidence. When he disregards uncontroverted expert medical evidence he must say why he has done so."); *see also Tussing v. George A. Hormel & Co.*, 417 N.W.2d 457, 458 (Iowa 1988) (finding commissioner's failure to state any reasons for rejecting overwhelming evidence, including medical evidence, that work-related injury occurred on date in question required reversal).

*Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 560 (Iowa 2010). This duty is not intended to be a burdensome one, and the fact-finder is not required "to discuss each and every fact in the record and explain why or why not [he or she] has rejected it." *Id.* The fact-finder's decision need only be "sufficiently detailed to show the path he has taken through conflicting evidence." *Id.*

Here, two different stories were presented at the hearing as to what occurred, and the ALJ was required to determine which story it found most credible. There is no question the ALJ, and subsequently, the EAB, did not

express the step-by-step reasoning process that led them to the conclusion that Tenco's witnesses were more credible than Jordan, but the decisions of the ALJ and EAB, the ultimate fact-finders here by law, found Tenco's version to be more credible. We must therefore agree with the district court that the lack of a specific statement concerning the agency's credibility determination was not a fatal flaw in its determination that sufficient evidence supported the agency's decision.

### B. *Misconduct and Hearsay*.

Turning to the agency's finding of misconduct, as we have noted above, our review of the agency's factual findings is circumscribed by statute. *See* Iowa Code § 17A.19(10)(f); G*reenwood Manor*, 641 N.W.2d at 839; *Sellers*, 531 N.W.2d at 646. If an agency has been clearly vested with the authority to make factual findings on a particular issue, then a reviewing court can only disturb those factual findings if they are "not supported by substantial evidence in the record before the court when that record is reviewed as a whole." Iowa Code § 17A.19(10)(f); *Burton*, 813 N.W.2d at 256. This review is limited to the findings that were actually made by the agency and not other findings the agency could have made. *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006).

Iowa Code section 96.5(2)(a) provides that if it found the ex-worker "has been discharged for misconduct in connection with the individual's employment . . . [t]he individual shall be disqualified for benefits . . . ." The Iowa Administrative Code defines misconduct as follows:

> "Misconduct" is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment.

> Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

Iowa Admin. Code r. 871-24.32(1)(a).

Jordan challenges the hearsay statement read into the record by Tenco's witness and accepted as fact by the ALJ and EAB. Ordinarily, where the "record is composed solely of hearsay evidence, a reviewing court will examine the evidence closely in light of the entire record to see whether it rises to the necessary levels of trustworthiness, credibility and accuracy required by reasonably prudent persons in the conduct of their serious affairs." *Schmitz v. Iowa Dep't of Human Servs.*, 461 N.W.2d 603, 607-08 (Iowa Ct. App. 1990); *see also* Iowa Code § 17A.14(1) ("A finding shall be based upon the kind of evidence on which reasonably prudent persons are accustomed to rely for the conduct of their serious affairs, and may be based upon such evidence even if it would be inadmissible in a jury trial."); *Clarke v. Iowa Dep't of Revenue & Fin.*, 644 N.W.2d 310, 320 (Iowa 2002) (holding that hearsay evidence is admissible and may constitute substantial evidence for an ALJ's opinion); *Gaskey v. Iowa Dep't of Transp.*, 537 N.W.2d 695, 698 (Iowa 1995) ("[H]earsay evidence is admissible at administrative hearings and may constitute 'substantial evidence.'"). However,

where no objection to the hearsay evidence was made before the ALJ, the objection to the evidence is waived. *Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 192 (Iowa 2013).

Here, the ALJ found Jordan had done what Tenco's employees said she had done. Moreover, the ALJ factually found Jordan's actions violated Tenco's policies. These determinations were for the agency to make. The district court concluded "that the [EAB]'s application of the law to the facts of this case was justified. Substantial evidence in the record shows that [Jordan] mistreated a nonverbal client of her employer. The [EAB] reasonably found that [Jordan] had engaged in 'misconduct' such that she was disqualified from receiving unemployment benefits." We agree. Consequently, we affirm the district court's judicial-review ruling, affirming the agency's decision.

### IV. Conclusion.

Because we conclude the agency was not required to make specific credibility findings in its decision, the unchallenged hearsay evidence was admissible, and substantial evidence in the record supported the agency's findings of facts and determination that Jordan's conduct constituted misconduct, we affirm the district court's judicial-review ruling.

**AFFIRMED.**