**IN THE COURT OF APPEALS OF IOWA**

No. 14-1764
Filed October 28, 2015

**AMJAD BUTT, M.D.,**
        Plaintiff-Appellant,

**vs.**

**IOWA BOARD OF MEDICINE,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom,

Judge.


        Amjad Butt, M.D., appeals the district court's ruling on judicial review

upholding the agency's remand decision. **AFFIRMED IN PART, REVERSED IN**

**PART, AND REMANDED WITH DIRECTIONS.**


        David L. Brown of Hansen, McClintock & Riley, Des Moines, and R.

Ronald Pogge and Amy B. Pellegrin of Hopkins & Huebner, P.C., Des Moines,

for appellant.

        Thomas J. Miller, Attorney General, and Jordan G. Esbrook and Meghan

L. Gavin, Assistant Attorneys General, for appellee.


        Heard by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

This appeal from an agency's remand decision raises several issues, including whether the agency exceeded this court's remand directions by making a fact finding and whether, if it did, the fact finding was supported by substantial evidence.

## I.  *Background Facts and Proceedings*

This is the second appeal arising from the Iowa Board of Medicine's discipline and sanction of Dr. Amjad Butt in Board Case No. 02-08-154.  *See Butt v. Iowa Bd. of Med.*, No. 12-1118, 2013 WL 2637283 (Iowa Ct. App. June 12, 2013).  The board issued a citation and warning, imposed a $5000 civil penalty, required Dr. Butt to successfully complete a professional boundaries program, and placed him on probation for five years.  *Id.* at *7.

The facts leading to the discipline were set forth in detail in our first opinion.  *See id.* at *1.  We find it unnecessary to repeat all the facts here.  The relevant portion of the opinion for purposes of this appeal was our conclusion that substantial evidence supported the following fact findings of the board: (1) Dr. Butt "[m]ade offensive comments to Nurse # 2 [Portz] during their meeting on February 11, 2008, and threatened to 'crush' her," and (2) Dr. Butt "[a]sked Employee # 1 [Peska], in a joking manner, if she would leave her husband and have his baby."  *Id.* at *15.  Based on these two fact findings, we affirmed

> the board's conclusion that Dr. Butt engaged in unethical and/or unprofessional conduct in violation of Iowa Code sections 147.55(3) and 272C.10(3) [(2007)] and Iowa Administrative Code rule 653–23.1(4) as charged in Count I in that he acted unprofessionally when he made offensive and threatening statements to Portz and when he made unprofessional comments to Peska.

*Id.* We "otherwise reversed the findings and conclusions as to that count." *Id.* We remanded "and directed the district court to remand these proceedings to the agency to determine the propriety of the discipline imposed in light of our conclusion." *Id.*

On remand, the board did not hold an evidentiary hearing; the agency simply heard arguments from counsel. After summarizing the procedural history, the board stated:

> The Board continues to have serious concerns that Respondent engaged in offensive, threatening and intimidating conduct toward clinic staff. The Board is concerned that Respondent's threatening and offensive statements undermined effective communication with clinic staff. *The Board believes that such conduct interferes with, or has the potential to interfere with, patient care and/or the effective functioning of health care staff.*

(Emphasis added). The board re-imposed the original sanctions, reasoning as follows:

> Given the nature and seriousness of these violations, the Board believes that its original sanctions are still appropriate and are necessary for the protection of the public. The Board believes that these violations are best remediated by requiring Respondent to complete of a Board-approved Professional Boundaries course and a five year probationary period, subject to Board monitoring. The Board was not persuaded by Respondent's argument that the Board should modify its prior sanctions in this case.

The board also declined to withdraw a report it made to the National Practitioner DataBank (NPDB). The board reasoned that "it was required by [federal law] to file a report."

On judicial review of the remand decision, the district court affirmed the agency decision. This appeal followed.

Dr. Butt now contends (A) the board's "new and additional findings of fact" were unsupported by substantial evidence; (B) the board's reporting to the NPDB was grounds for reversal; (C) the discipline imposed by the board was inconsistent with prior practice and was otherwise arbitrary, capricious, or an abuse of discretion; (D) the negative impact on his rights was grossly disproportional to the benefits accruing to the public interest; and (E) the board violated his right to procedural due process.

## II.    Analysis

### A.  New or Additional Findings of Fact & Substantial Evidence

#### 1.  New or Additional Finding of Fact

The Iowa Supreme Court has stated:

> When an appellate court remands a case to a trial court for some stated further proceeding, the nature and extent of that proceeding are circumscribed. The authority of the court on remand is limited to the matters specified by the appellate court. Put another way, the trial court has no authority to act on matters outside the appellate court's mandate. [T]he same rule applies to an administrative agency.

*Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 573 (Iowa 2006).

As noted, the remand decision stated, "The Board believes that such conduct interferes with, or has the potential to interfere with, patient care and/or the effective functioning of health care staff." According to Dr. Butt, this language is a "widen[ing of the board's] previous factual findings and conclusions of law . . . to allege Dr. Butt caused patient harm." The board responds that the language is simply a recapitulation of an agency rule quoted by this court in its prior opinion. Notwithstanding well-articulated written and oral advocacy by board counsel, we find the board's argument unpersuasive.

Our prior opinion recounted the board's initial statement of charges and the statutory and regulatory provisions alleged to have been violated. *See Butt*, 2013 WL 2637283, at *1. We quoted several provisions, including ones the board found were not violated. *See, e.g.*, Iowa Admin. Code r. 653-13.7(6) (stating, "A physician shall not engage in sexual harassment. Sexual harassment is defined as verbal or physical conduct of a sexual nature which interferes with another health care worker's performance or creates an intimidating, hostile or offensive work environment."). One of the quoted provisions was Iowa Administrative Code rule 653-13.7(5), which states:

> A physician shall not engage in disruptive behavior. Disruptive behavior is defined as a pattern of contentious, threatening, or intractable behavior that interferes with, or has the potential to interfere with, patient care or the effective functioning of health care staff.

We specifically pointed out the board's rejection of the single charge involving patients. *See Butt*, 2013 WL 2637283, at *6. And, as discussed, we found substantial evidence to support only two fact findings, both of which related to physician-employee interactions and neither of which mentioned patient care.

On remand, the board was to reconsider the penalty in light of our rejection of several fact findings. The board was afforded no authority to make additional fact findings or determinations of ultimate fact. *See Winnebago*, 727 N.W.2d at 573. Our opinion became the law of the case. *See id.* ("The doctrine of the law of the case represents the practice of courts to refuse to reconsider what has once been decided." (Citations omitted)).

Without authorization, the board added a statement not contained in its original decision concerning Dr. Butt's interference or potential interference with

patient care. The board prefaced the statement with the language, "The Board believes." The board neither cited nor quoted rule 653-13.7(5).

Given the absence of a citation to rule 653-13.7(5), the board argues the rule was incorporated by reference within the cited rule governing unethical or unprofessional conduct. *See* Iowa Admin. Code r. 653-23.1(4). In its view, rule 653-23.1(4) includes 'violation of the standards and principles of medical ethics" and "[s]ection 653-13.7 is a rule on medical ethics which addresses 'standards of practice' for 'office practices' and includes a prohibition on 'disruptive behavior.'" If we were to accept the board's argument, the board could find a violation of any of the varied "standards of practice" contained in the rule, whether specifically charged or not.[1] This is an irrational, illogical, and wholly unjustifiable interpretation of rule 653-23.1(4). *See Evercom Sys., Inc. v. Iowa Utils. Bd.*, 805 N.W.2d 758, 763 (Iowa 2011) ("We will [] review the Board's interpretation of the rules it has promulgated . . . under the same deferential standard we used to review the Board's interpretation of the statute."); s*ee also Al-Jurf v. Iowa Bd. of Med.*, No. 12-0293, 2013 WL 3830159, at *4 (Iowa Ct. App. July 24, 2013) (stating professional boards are clearly vested "with authority to interpret the chapters at issue").

Notably, the board's own charging document did not incorporate all the rule 653-13.7 standards by reference. Instead, the board cited a single standard from the rule, the standard relating to sexual harassment. *See* 653 Iowa Admin.

---

[1] The rule proscribes everything from neglect of a patient to receipt of compensation for patient referrals.

Code r. 653-13.7(6). Rule 653-13.7(5) on disruptive behavior was not mentioned.

We conclude the statement, "The Board believes that such conduct interferes with, or has the potential to interfere with, patient care and/or the effective functioning of health care staff," was an agency finding of fact. We further conclude the finding of fact was not authorized by our remand directions.

*2. Substantial Evidence*

Anticipating this conclusion, the board asserts, "Even if the Court views the Board's recitation of [the] agency rule as a finding of fact, [] the statement is appropriate and not grounds for reversal." In its view, "The Board made the statement in order to answer" the question of the appropriate discipline. The board contends, "Adequate patient care requires nurses, doctors, and clinic employees to work together closely" and "Dr. Butt's disruptive behavior does have the potential to jeopardize patient care, in that nurses and employees that are badly treated may avoid doctors or fail to communicate effectively about patient care."

The board seems to argue it did nothing more than draw the obvious inferences that "adequate patient care requires nurses, doctors, and clinic employees to work together closely" and disruptive behavior could jeopardize patient care. But inferences, whether obvious or not, must amount to more than speculation and must be subject to reasonable deduction from the record. *See Lewis v. State ex. rel. Miller*, 646 N.W.2d 121, 124 (Iowa 2002) ("An inference is not legitimate if it is based upon speculation or conjecture." (citation omitted)). The board's finding that Dr. Butt's conduct interfered with or had the potential to

interfere with patient care could not reasonably be deduced from the record. *See id.*

The board's appellate brief cites no record evidence supporting the finding of an actual or potential threat to patient care. When pressed at oral argument, board's counsel cited one of the employee's expressions of fear of Dr. Butt. The board did not make a specific finding that Nurse Portz feared Dr. Butt. Assuming such fear can be gleaned from the record, the board found and our opinion stated Nurse Portz "never even worked with Dr. Butt." *Butt*, 2013 WL 2637283, at *4. As for employee Peska, our opinion notes she became "nervous" as a result of Dr. Butt's comments.[2] *See id.* at *13. Even if nervousness were synonymous with fear, the board points to no evidence Peska was involved with patient care.[3]

Because the board's finding that Dr. Butt interfered or potentially interfered with patient care could not reasonably be deduced from the record, it follows the finding was not supported by substantial evidence. *See* Iowa Code § 17A.19(10)(f) (2013). We reverse the board's remand decision to the extent it included this unauthorized fact finding, the patient care portion of which is also unsupported by substantial evidence. We remand to the district court for an

---

[2] The paper "certified copy" of the agency record does not include the original hearing transcript. The electronic record includes excerpts from the original hearing transcript. It is unclear why the electronic version deviates from the paper version. Relying on the table of contents to the original hearing transcript included in the electronic version, we have reviewed the transcript pages that should correspond to Employee Peska's testimony. No mention is made of her fear of Dr. Butt. As for Nurse Portz's testimony, we cannot find it in the electronic or paper version of the record. Her written statement, however, is included in both records and states, "I am also hoping for a long life ahead of me. If something does happen to me; I hope Medical Associates will enlighten investigators of the preceding event that has occurred with Dr. Butt."

[3] The record includes the agency's original fact findings in their entirety, which state "Employee #1 [Peska] worked as a scheduler."

order directing the board to file an amended decision striking the following sentence: "The Board believes that such conduct interferes with, or has the potential to interfere with, patient care and/or the effective functioning of health care staff."

### B. Refusal to Withdraw Report to National Practitioner DataBank

As noted, Dr. Butt asked the Board to withdraw its report from the NPDB.[4] On remand, the board declined the request.

At oral arguments, Dr. Butt conceded the board is required to report sanctions and discipline to the Databank. *See* Iowa Admin. Code r. 653-25.32 ("The board shall report final decisions to the appropriate organizations, including but not limited to the National Practitioner DataBank . . . ."). He takes issue with the board's decision to answer "Yes" to the following question: "Is the Adverse Action Specified in this Report Based on the Subject's Professional Competence or Conduct, Which Adversely, or Could have Adversely Affected, the Health or Welfare of the Patient?" He asserts this portion of the report was "false and not based on evidence in the record."

Federal regulations governing the NPDB state:

> Persons and entities are responsible for the accuracy of information which they report to the NPDB. If errors or omissions are found after information has been reported, the person or entity which reported it must send an addition or correction to the NPDB . . . as soon as possible. The NPDB will not accept requests for readjudication of the case by the NPDB, and will not examine the underlying merits of a reportable action.

---

[4] In our first appeal, we did not decide whether the board should have withdrawn its report to the NPDB. Accordingly, our opinion did not become the law of the case on the issue of NPDB reporting. *See State ex. rel. Goettsch v. Diacide*, 596 N.W.2d 532, 537 (Iowa 1999) (stating the law of the case doctrine only applies to so much of the prior opinion that was essential to the determination required by the court).

45 C.F.R. § 60.6 (2013).  This provision requires the board to inform the NPDB of our conclusion in Part IIA concerning the unauthorized and largely unsupported remand finding and the striking of that finding.  Absent the finding, there is no evidentiary support for the "Yes" answer to the question on the NPDB form concerning patient care.  Accordingly, we remand to the district court to remand to the agency with directions to (1) include in its amended decision a statement that the report to the NPDB will be amended to answer "No" to the question, based on the evidentiary record made in Case No. 02-08-154, and (2) submit the amended decision to the NPDB within thirty days of its issuance.

### *C. Discipline*

Dr. Butt next argues the board's decision to impose the same sanctions originally imposed was "inconsistent with prior practice and otherwise arbitrary, capricious, or an abuse of discretion."  In his view, because this court "reversed a portion of the Board's initial findings upon which the original sanctions were imposed, . . . then reason would follow that those same sanctions would not be appropriate for a lesser set of facts."

As the board points out, Dr. Butt failed to articulate how the sanctions were inconsistent with prior practice.  Accordingly, we will not consider this standard of review.  *See* Iowa Code §17A.19(10)(h).

Turning to the "arbitrary and capricious" standard cited by Dr. Butt, agency action is "arbitrary and capricious" if it was made "without regard to the law or facts."  *Greenwood Manor v. Iowa Dep't of Pub. Health, State Health Facilities Council*, 641 N.W.2d 823, 831 (Iowa 2002).  It is clear from our prior opinion that

the board had grounds to discipline Dr. Butt. Accordingly, reversal is not mandated under this standard of review. *See* Iowa Code § 17A.19(10)(n).

We are left with the question of whether the imposition of the same sanctions constituted an abuse of discretion. *Id.* The board is authorized to impose a broad range of disciplinary sanctions, including revocation, suspension, restriction, probation, additional education or training, physical or mental evaluation, and civil penalties, citations, and warnings. *See* Iowa Admin. Code r. 653-25.25(1). In "determining the nature and severity of the disciplinary sanction," the board, in its "discretion," "may [] consider[]" several factors:

> *a.* The relative seriousness of the violation.
> *b.* The facts of the particular violation.
> *c.* Any extenuating circumstances or other countervailing considerations.
> *d.* Number of prior complaints, informal letters or disciplinary charges.
> *e.* Seriousness of prior complaints, informal letters or disciplinary charges.
> *f.* Whether the licensee has taken remedial action.
> *g.* Such other factors as may reflect upon the competency, ethical standards and professional conduct of the licensee.

Iowa Admin. Code r. 653-25.25(2). These rules vest the board with discretion to determine the sanction. *See Hagen v. Iowa Dental Bd.*, No. 13-0162, 2013 WL 4769330, at *5 (Iowa Ct. App. Sept. 5, 2013).

In ordering remand for reconsideration of the penalty, this court did not require the sanction to be lowered in light of our reversal of certain fact findings. *See Butt,* 2013 WL 2637283, at *15. We left it to the board to evaluate the propriety of the sanctions. *Id.* Under these circumstances, we are convinced there was no abuse of discretion in the imposition of the same sanctions. *See*

*Burns v. Bd. of Nursing of State of Iowa*, 528 N.W.2d 602, 605 (Iowa 1995) ("When the licensing board is made up of members of the profession they are licensing, the court should not second guess the board's discretion to determine" sanctions.). Accordingly, we affirm the sanctions imposed by the board on remand.[5]

### D. Grossly Disproportional

Dr. Butt contends the sanctions were grossly disproportionate to his conduct. *See* Iowa Code §17A.19(10)(k) (authorizing reversal where the agency action is "[n]ot required by law and its negative impact on the private rights affected is so grossly disproportionate to the benefits accruing to the public interest from that action that it must necessarily be deemed to lack any foundation in rational agency policy"). He focuses on the costs he incurred as a result of the sanctions. This court rejected a similar argument in *Hagen*, 2013 WL 4769330, at *5-6 (rejecting claim that potential monetary collateral consequences of the board's discipline render an otherwise appropriate sanction grossly disproportionate). Similarly, we conclude the monetary outlay by Dr. Butt does not render the sanction "so grossly disproportionate to the benefits accruing to the public interest from that action that [the agency action] must necessarily be deemed to lack any foundation in rational agency policy." *See id.* at *5.

### E. Due Process

Dr. Butt contends his constitutional right to due process was violated when the board's presiding officer discussed the time consuming nature of "repeat

---

[5] As noted, we have separately considered the report to the NPDB.

hearings." This issue was not preserved for our review. *Fisher v. Iowa Bd. of Optometry Exam'rs*, 478 N.W.2d 609, 612 (Iowa 1991).

### III. Disposition

We affirm the sanctions imposed by the agency on remand and the balance of the decision, excluding the following statement: "The Board believes that such conduct interferes with, or has the potential to interfere with, patient care and/or the effective functioning of health care staff." We reverse this agency statement as an unauthorized fact-finding, which is largely unsupported by substantial evidence.

We remand to the district court for an order directing the board to file an amended decision striking the statement. We further remand to the district court to remand to the agency with directions to (1) include in its amended decision a statement that the report to the National Practitioner Databank will be amended to answer "No" to the question on the NPDB form concerning patient care, based on the evidentiary record made in Case No. 02-08-154, and (2) submit the amended decision to the NPDB within thirty days of its issuance.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**