# IN THE COURT OF APPEALS OF IOWA

No. 17-1650
Filed December 5, 2018

**ROMOKE OLUTUNDE,**
        Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF HUMAN SERVICES,**
**CHARLES M. PALMER, DIRECTOR,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Linn County, Patrick R. Grady,

Judge.


        Plaintiff appeals the district court decision affirming the ruling of the Iowa

Department of Human Services finding plaintiff committed dependent adult abuse.

**AFFIRMED.**


        James R. Hinchliff and Andrew B. Howie of Shindler, Anderson, Goplerud

& Weese, PC, West Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant

Attorney General, for appellees.


        Heard by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Romoke Olutunde appeals the district court decision affirming the Iowa Department of Human Services (DHS) ruling finding she committed dependent adult abuse. We find DHS properly interpreted the term "caretaker" and concluded Olutunde was a caretaker of the patient in question during the relevant period of time. We also find there is substantial evidence in the record to show staff trained by Olutunde were not consistent in providing medication to the patient in a timely manner, or at the very least, were not consistent in providing documentation to show whether or not the patient was receiving her medication as prescribed. We affirm the district court's decision, affirming the decision of DHS finding Olutunde committed dependent adult abuse.

## I. Background Facts & Proceedings

At the time of the incidents in this case in March 2014, J.N. was a fifty-five year old person unable to care for herself due to physical and mental health problems. In particular, J.N. needed assistance in managing her medications. J.N. did not have the ability to know which medications to take or when to take them. The parties agree J.N. was a dependent adult within the meaning of Iowa Code section 235B.2(4) (2014).

In December 2013, J.N. began living at All Ages Care Services, LLC (All Ages). Olutunde, a certified nursing assistant, was the owner and clinical director of All Ages, and she provided training and supervision of employees working there. Olutunde was not present at All Ages every day. All Ages had an administrator

who provided day-to-day supervision of employees.[1]  At times, when no one else was available, Olutunde would work a shift for an absent employee and provide direct care for the patients.  Olutunde testified she never administered medication to J.N.

On March 6, 2014, J.N. began attending Robert E. Miller Iowa Developmental Services (REM) from 8:45 a.m. to 2:15 p.m. each day, then returning to All Ages.  When J.N. first began attending REM, the day program did not have authorization to administer J.N.'s medication to her.  An employee of All Ages was supposed to go to REM every afternoon to give J.N. her medication.  REM received permission on March 25, 2014, to give J.N. her afternoon medication.  J.N.'s DHS case manager, Angela Albers, moved J.N. from All Ages to a different residential facility on May 1, 2014.

On March 28, 2014, DHS received an allegation J.N. had been subjected to dependent adult abuse.  The allegation claimed J.N. had been denied critical care due to failure to ensure she was receiving her medications as prescribed.  Three areas of complaint were raised: (1) whether someone from All Ages went to REM to give J.N. her medication every afternoon from March 6 to 25; (2) during the same time period, whether J.N.'s medication was sometimes placed in her backpack to be transported to REM although J.N. was not to have access to the medication; and (3) after March 25, whether bubble packs containing J.N.'s medication showed she had not been receiving all of her medication while at All Ages.

---

[1]  During part of the time in question, the administrator was Soji Olutunde, Olutunde's husband.  Later, Sam Blackford was hired as the administrator of All Ages.

DHS issued a founded report against Olutunde, finding she was "responsible for making sure that the staff has the necessary training to care for [J.N.] and in dealing with crisis situations." The report stated:

> There is evidence that the dependent adult does not have adequate medical care. [A DHS worker] reviewed the medication log for March 2014 for [J.N.] and there are a lot of questions, regarding inconsistencies that no one seems to be able to answer to. REM staff have also reported that medication in [J.N.]'s bubble packs was still there for several days, indicating she was not getting it. This was apparent after viewing the log. [Olutunde] did not provide her staff with All Ages the appropriate training to know and understand medication passing in order to ensure that [J.N.] was getting the adequate medical care she needed daily. [Olutunde] admits to being the one responsible for all consumers' care, however, she is unable to answer questions regarding the agency or consumers, as [Soji] is the primary one to run the agency.

Olutunde filed an administrative appeal of the founded report with the Iowa Department of Inspections and Appeals (DIA). A hearing was held in which evidence both supporting and contrary to the findings in the founded report was presented.

The administrative law judge (ALJ) reversed the founded report against Olutunde. The ALJ found Olutunde was not a caretaker within the meaning of Iowa Code section 235.2(5)(a)(1)(d) and *Mosher v. Department of Inspections & Appeals*, 671 N.W.2d 501, 511–12 (Iowa 2003). The ALJ determined DHS did not show Olutunde was present during acts of dependent adult abuse or personally deny J.N. adequate medical care. The ALJ also found J.N. was not given her afternoon medication on March 6, 2014, but concluded, "I cannot base 'Founded' determinations of dependent adult abuse against Olutunde based on evidence that

on one date, J.N. was not given her medications as prescribed."[2]  The ALJ determined Olutunde's name should be removed from the adult abuse registry.

DHS appealed the ALJ's decision to the DHS director.  In a final decision, the director adopted the ALJ's factual findings but came to different legal conclusions.  He affirmed the founded report of dependent adult abuse.  The director disagreed with the ALJ's interpretation of *Mosher*, finding Olutunde was J.N.'s caretaker because she was responsible for the care J.N. received in the facility and the training of J.N.'s caregivers.  The director also found there were ongoing problems with J.N.'s medications, noting REM often needed to remind staff from All Ages to come over to give J.N. her afternoon medication, J.N. would bring her medications in her backpack, and the bubble packs showed J.N. was not receiving all of her medications.  The director concluded Olutunde "deprived J.N. of the minimum level of medical care to the extent that there was an immediate or potential danger to [J.N.]"

Olutunde filed a petition for judicial review of the director's decision.  The district court agreed with the director's interpretation of *Mosher*, finding Olutunde qualified as a caretaker at the time J.N. was subjected to dependent adult abuse.  The court found, "As director of the clinic, Olutunde assumed responsibility for J.N.'s protection, care and custody at the time of the specifically alleged abuse or neglect in this case."  The court determined there was substantial evidence in the record to show J.N. was not properly supervised by Olutunde, stating "J.N.'s

---

[2]  Under Iowa Code section 235B.3(1)(c), a report of dependent adult abuse should not be considered confirmed if the abuse is determined to be "minor, isolated, and unlikely to reoccur."  *See also* Iowa Admin. Code r. 441—176.3(4),

medications were not always in the right place at the right time and were not administered to her regularly or in the manner by which they were prescribed." The court affirmed the director's decision. Olutunde now appeals.

## II.    Standard of Review

On a petition for judicial review, our review of an agency's decision is governed by Iowa Code section 17A.19(10). *Ghost Player, LLC v. Iowa Dep't of Econ. Dev.*, 906 N.W.2d 454, 462 (Iowa 2018). "The district court may properly grant relief if the agency action prejudiced the substantial rights of the petitioner and the agency action fits one of the enumerated criteria included in Iowa Code section 17A.19(10)(a)–(n)." *Id.* "In reviewing the decision of the district court, we must apply the standards set forth in Iowa Code section 17A.19(10) to determine whether we reach the same result as the district court." *Kopecky v. Iowa Racing & Gaming Comm'n*, 891 N.W.2d 439, 442 (Iowa 2017).

## III.    Dependent Adult Abuse

As pertaining to this case, dependent adult abuse means, "The deprivation of the minimum food, shelter, clothing, supervision, physical or mental health care, and other care necessary to maintain a dependent adult's life or health," "as a result of the willful or negligent acts or omissions of a caretaker." Iowa Code § 235B.2(5)(1)(d). "'Minimum food, shelter, clothing, supervision, physical and mental health care, and other care' means that food, shelter, clothing, supervision, physical and mental health care, and other care which, if not provided, would constitute denial of critical care."[3] Iowa Admin. Code r. 441—176.1. The term

---

[3]    Iowa Administrative Code rule 441-176.1 provides:

"caretaker" is defined as "a related or nonrelated person who has the responsibility for the protection, care, or custody of a dependent adult as a result of assuming the responsibility voluntarily, by contract, through employment, or by order of the court." *Id.*; Iowa Code § 235B.2(1).

All of the following criteria must be met for a finding of dependent adult abuse:

> a.     The person is a dependent adult.
> b.     Dependent adult abuse exists as defined in Iowa Code section 235B.2.
> c.     A caretaker exists in reports of physical injury to or unreasonable confinement or cruel punishment of a dependent adult; commission of a sexual offense; exploitation; and deprivation by another person of food, shelter, clothing, supervision, physical and mental health care and other care necessary to maintain life or health.

Iowa Admin. Code r. 441—176.3(1).

**A.**     Olutunde claims she was not a caretaker for J.N. within the meaning of section 235B.2(5)(1)(d). She points out she was not directly involved in the care of J.N. and did not administer medication to her. Olutunde did not work with the residents of All Ages on a regular basis. She states there is no evidence to show she deprived J.N. of "the minimum food, shelter, clothing, supervision, physical or mental health care, and other care necessary to maintain a dependent adult's life or health." *See* Iowa Code § 235B.2(5)(1)(d).

---

"Denial of critical care" exists when the dependent adult's basic needs are denied or ignored to such an extent that there is immediate or potential danger of the dependent adult suffering injury or death, or is a denial of, or a failure to provide the mental health care necessary to adequately treat the dependent adult's serious social maladjustment, or is a gross failure of the caretaker to meet the emotional needs of the dependent adult necessary for normal functioning, or is a failure of the caretaker to provide for the proper supervision of the dependent adult.

Much of the discussion in the proceedings in this case has involved the meaning of *Mosher*, 671 N.W.2d at 511–12. While Tiffany Mosher was the administrator of a licensed nursing facility and J.B. was a patient, Mosher obtained a loan from J.B. *Mosher*, 671 N.W.2d at 504. Mosher left her job and became employed at a different facility, but continued to visit J.B. *Id.* Subsequently, J.B. left this facility as well. *Id.* After neither Mosher nor J.B. were at the same facility, Mosher received further gifts and loans from J.B. *Id.* at 505. DIA determined Mosher had committed dependent adult abuse by financially exploiting J.B. *Id.* at 506. The district court reversed the agency's decision, finding J.B. was not a dependent adult. *Id.* The court also found Mosher was a caretaker while she was the administrator of the facility where J.B. resided but was not his caretaker after she left her job there. *Id.*

DIA appealed. *Id.* at 507. In discussing the statutory definition of terms in chapter 235B, the Iowa Supreme Court determined, "Because DHS, not DIA, clearly has discretion to interpret this particular provision, it would be contrary to the language of the statute for this court to hold that DIA has the discretion to elaborate on the statutory definition of this term." *Id.* at 510. The court concluded, "Consequently, we will review DIA's interpretation of chapter 235B for correction of errors of law and not under the more deferential standard permitting reversal only where the agency's interpretation is 'irrational, illogical, or wholly unjustifiable.'" *Id.* (citing Iowa Code § 17A.19(10)(c), (*l*)).

The supreme court found "the requisite elements of exploitation of a 'dependent adult' by a 'caretaker' must be present at the time of the specific act providing a basis for DIA's determination that Mosher committed 'dependent adult

abuse.'" *Id.* at 511. "Section 235B.2(5)(a)(1)(c) requires that a person qualify as a caretaker at the time of each specific act of abuse." *Id.* at 518. The court found Mosher was no longer a "caretaker" when she received gifts from a J.B. after she was no longer the administrator of the facility where he lived.[4] *Id.* at 511–12. The Iowa Supreme Court additionally found J.B. was not a dependent adult within the meaning of section 235B.2(4). *Id.* at 518. The court concluded Mosher had not committed dependent adult abuse. *Id.* at 518–19.

Under *Mosher*, DHS's interpretation of chapter 235B should be reversed only where the agency's interpretation is "irrational, illogical, or wholly unjustifiable." *Id.* at 510 (citing Iowa Code § 17A.19(10)(*l*)). "This standard requires us to allocate some deference to the [agency's] determinations, but less than we give to the agency's findings of fact." *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009). "A decision is 'irrational' when it is 'not governed by or according to reason.' A decision is 'illogical' when it is 'contrary to or devoid of logic.' A decision is 'unjustifiable' when it has no foundation in fact or reason." *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 265 (Iowa 2012) (quoting *Sherwin–Williams Co. v. Iowa Dep't of Revenue,* 789 N.W.2d 417, 432 (Iowa 2010)).

On the issue of whether Olutunde was a "caretaker" of J.N., the director of DHS stated:

> The language in *Mosher* pertains to individuals who are no longer employed at the facility out of which the caretaker relationship arises at the time the abuse occurs, not to individuals still employed at the facility, who have supervisory ownership over the facility during

---

[4] In *Mosher*, the district court found Mosher was a caretaker for J.B. during the time she was the administrator of the facility where J.B. resided. *Mosher*, 671 N.W.2d at 511. This finding was not challenged on appeal, and therefore, not discussed in the supreme court's opinion on this issue.

the relevant time period. In this instance [Olutunde was] running the facility during the time period J.N. was alleged to have received improper medical care. [Olutunde] had accepted J.N. into [the] facility. [Olutunde was] responsible for training and supervision of the individuals who provided J.N. direct care while she resided in [the] facility. Therefore, [Olutunde was] responsible for J.N. being in [the] facility, for the care J.N. received in [the] facility, and for training J.N.'s caregivers. [Olutunde was] responsible for her care and protection.

We conclude DHS's interpretation of the term "caretaker" in section 235B.2(1) is not irrational, illogical, or wholly unjustifiable. *See* Iowa Code § 17A.19(10)(*l*). Section 235B.2(1) defines the term "caretaker" as "a related or nonrelated person who has the responsibility for the protection, care, or custody of a dependent adult as a result of assuming the responsibility voluntarily, by contract, through employment, or by order of the court." We are unable to find the agency's interpretation of the term "caretaker" to include a director of a facility who was responsible for supervision and training of employees is "not governed by or according to reason," "contrary to or devoid of logic," or having "no foundation in fact or reason." *See Burton*, 813 N.W.2d at 265. We affirm DHS's decision Olutunde was a caretaker of J.N. during the relevant time period.

**B.** Olutunde claims there is not substantial evidence in the record to show she engaged in willful or negligent acts or omissions to deprive J.N. "of the minimum food, shelter, clothing, supervision, physical or mental health care, and other care necessary to maintain a dependent adult's life or health." *See* Iowa Code § 235B.2(5)(1)(d). She states there was insufficient evidence to show J.N. was not given all of her medication at the prescribed time. She also states, even if there was evidence J.N. did not receive all of her medications in a timely manner, there is insufficient evidence to show this was due to Olutunde's willful or negligent

acts. Olutunde claims the evidence does not show the supervision and training she provided to the employees of All Ages caused harm to J.N.

"Substantial evidence" is considered to be "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011) (quoting Iowa Code § 17A.19(10)(f)(1)). We view the evidence as a whole and consider it "in light of all the relevant evidence in the record." Iowa Code § 17A.19(10)(f)(3).

We do not consider whether the evidence supports a different finding, instead we consider whether there is substantial evidence to support the agency's factual findings. *Abbas v. Iowa Ins. Div.*, 893 N.W.2d 879, 891 (Iowa 2017). In other words, "An agency's decision does not lack substantial evidence because inconsistent conclusions may be drawn from the same evidence." *Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 366 (Iowa 2016) (citation omitted). "[E]vidence is not insubstantial merely because it would have supported contrary inferences." *Wal-Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 499 (Iowa 2003).

The director of DHS found:

[Olutunde was] running the facility during the timeframe J.N. received improper medical care. [Olutunde] had accepted J.N. into [the] facility. [Olutunde was] responsible for supervising and training the individuals who provided J.N.'s direct care. [Olutunde] must be deemed to have been J.N.'s caretaker because [she was] responsible for [the] facility, for the care she received in the facility, and for training her caregivers. [Olutunde was] responsible for the

fact the facility was run in such a manner there was confusion within the facility over who had direct responsibility for administering J.N.'s medications.

Also, "[a] reasonable and prudent person would have ensured that [J.N.] had adequate medical care, was getting the proper medications, and staff were properly trained."

We determine there is substantial evidence in the record to show staff trained by Olutunde were not consistent in providing medication to J.N. in a timely manner, or at the very least, were not consistent in providing documentation to show whether or not J.N. was receiving her medication as prescribed.[5] There was a very high turnover of employees at All Ages, with the result not all of the employees had adequate training to perform their jobs successfully. During the time J.N. was at All Ages, Olutunde promoted Blackford, who had previously been a youth pastor, to be the administrator who would have supervision over the employees to make sure the patients received the care they needed. The record does not show Blackford had the education or training to supervise the other employees working for All Ages. The promotion of Blackford shows Olutunde was aware the facility needed an outside person to help supervise the employees.

Stephanie Bawek, the program coordinator for REM, testified no one came from All Ages to give J.N. her medication at 2:00 p.m. on more than one occasion. Bawek also testified when REM began giving J.N. her medication at 2:00 p.m., the

---

[5] In our discussion of substantial evidence, we do not address the issue of whether J.N.'s medication was placed in her backpack and whether she had access to the backpack while she was transported between All Ages and REM. There is no evidence J.N. ever accessed the medication or there were any negative consequences from transporting the medication in her backpack. *See* Iowa Code § 235B.2(5)(d); Iowa Admin. Code r. 441—176.1.

bubble packs containing the medication showed not all of J.N.'s medication had been given to her while she was at All Ages. Dr. Timothy Volk testified J.N. would have negative medical effects, such as increased seizures, if she did not receive her medication. Albers testified she believed J.N. had multiple seizures, which was more than normal, during her time at All Ages. J.N. also had uncharacteristic hospitalizations. In addition, she lost weight while she was at All Ages for three months, going from 189 pounds to 123 pounds.

At the administrative hearing, Olutunde testified she owned All Ages. She stated she trained the employees, including training on passing medication. Olutunde testified:

> Q. With regard to the proper treatment of people like [J.N.], she was under the care of people you supervised; correct? A. Yes, sir.
> Q. And so you were responsible for her care; right? A. Yes, sir.
> Q. And you were also responsible for making sure she had the right medical care and medication; correct? A. Yes, sir.

We conclude there is substantial evidence in the record to support DHS's conclusion J.N. did not receive all of her medication as prescribed and this was due to negligent supervision and training by Olutunde. We are cognizant there is contrary evidence in the record, but this does not mean the agency's factual findings are not supported by substantial evidence. *See Evenson*, 881 N.W.2d at 366. "[E]vidence is not insubstantial merely because it would have supported contrary inferences." *Wal-Mart Stores*, 657 N.W.2d at 499.

We affirm the district court's decision affirming the decision of DHS finding Olutunde committed dependent adult abuse of J.N. "as a result of the willful or negligent acts or omissions of a caretaker" depriving her "of the minimum food,

shelter, clothing, supervision, physical or mental health care, and other care necessary to maintain a dependent adult's life or health." *See* Iowa Code § 235B.2(5)(1)(d).

**AFFIRMED.**